**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **AMANDA IVANOFF, JUSTIN MARC WILLIAMS, BJ JONES, NIKOLE SUTTON, DAWN AMENT, SCOTT T. CLARK, DEBRA BELL, CHANDRA BROOKS, SHAWNTRELL WASHINGTON, BRANDON BULGER, LUANE LAGRECA, CHRISTY ROOKER, VALERIE TAYLER, BRIAN SLAFTER, TENIKA IMAKU, REBECCA DOOLIN, ROBERT BOTTERILL, KEISHA NELSON, SUHEL NAZARIO, AMY METZINGER, JACOB QUILL, TIMOTHY E. SHERER, NANCY STOCKWELL, TONY MCLEMORE, MAKAHLA RUTLEDGE, DEBORAH REYNOLDS, SHANNON MCFARLAND, MARK BLANCHE JR., CELIA WILLIAMS, DOLORES CUNNINGHMA, DANIELLE THOMAS, LYNETTE WAKEFIELD** *and* **SARAH KINGERY,** *individually and on behalf of all others similarly situated*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT** |
| | ) |
| **WALMART INC.,** | ) **JURY TRIAL DEMANDED** |
| Serve At: | ) |
| CT Corporation System | ) |
| 4400 Easton Commons Way, Suite 125 | ) |
| Columbus, OH 43219 | ) |
| | ) |
| **CL PRODUCTS INTERNATIONAL, LLC**, | ) |
| Serve At: | ) |
| 10521 Millington Court, Suite B | ) |
| Cincinnati, OH 45242 | ) |
| | ) |
| **CANDLE-LITE COMPANY, LLC**, *and* | ) |
| Serve At: | ) |
| 10521 Millington Court, Suite B | ) |
| Cincinnati, OH 45242 | ) |
| | ) |
| **LUMINEX HOME DÉCOR AND FRAGRANCE COMPANY, LLC** | ) ) |

Serve Registered Agent:                              )
Corporate Creations Network, Inc.                    )
119 E. Court Street                                  )
Cincinnati, OH  45202                                )
                                                     )
        Defendants.                                  )

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs Amanda Ivanoff, Justin Marc Williams, BJ Jones, Nikole Sutton, Dawn Ament, Scott T. Clark, Debra Bell, Chanda Brooks, Shanwtrell Washington, Brandon Bulger, Luane Lagreca, Christy Rooker, Valerie Taylor, Brian Slafter, Tenika Imaku, Rebecca Doolin, Robert Botterill, Keisha Nelson, Suhel Nazario, Amy Metzinger, Jacob Quill, Timothy E. Sherer, Nancy Stockwell, Tony McLemore, Makahla Rutledge, Deborah Reynolds, Shannon McFarland, Mark Blanche Jr., Celia Williams, Dolores Cunningham, Danielle Thomas, Lynette Wakefield and Sarah Kingery, individually and on behalf of all others similarly situated, and for their Class Action Complaint against Defendants Walmart Inc. ("Walmart"), CL Products International, LLC ("CL"), Candle-Lite Company, LLC ("Candle-Lite") and Luminex Home Décor and Fragrance Company, LLC  ("Luminex"), states and alleges as follows:

### INTRODUCTION

1.      Plaintiffs bring this action to address a serious safety-related defect in the design and manufacture of Defendants' Mainstays candles. Specifically, the candles are becoming engulfed in flames and/or exploding.

2.      For at least several years, Defendants have received information indicating purchasers of Mainstays candles have experienced excessive flames, flames that cannot be blown out or extinguished, flammable wax, and candles that explode while burning.  These dangerous Mainstays candles have caused scorching or smoke damage to ceilings and the explosions have

created a shower of glass, melted wax, and/or burning wax. As a result, purchasers have been damaged.

3.      Defendants knew or should have known of these problems and the dangerous conditions of these candles, yet failed to inform purchasers of the dangers of the candles and instead sold the Mainstays products and candles as suitable and safe for use to burn in households and around people.

4.      Plaintiff seeks to certify this case as a class action, and to recover damages and equitable relief, including restitution and injunctive relief.

## PLAINTIFFS

### ARIZONA

5.      Plaintiff Amanda Ivanoff is a resident of Arizona.

6.      Amanda Ivanoff purchased two or three Mainstays candles from Walmart and had one burst into flames sending a piece of the burnt wick up in the air and landing on her thumb.

7.      Plaintiff Justin Marc Williams is a resident of Arizona.

8.      Justin Marc Williams purchased Mainstays candles from Walmart from 2017 to 2019.

9.      A few of the Mainstays candles Justin purchased dangerously shot hot wax everywhere.

### ARKANSAS

10.      Plaintiff BJ Jones is a resident of Traskwood, Arkansas.

11.      BJ Jones purchased various varieties of Mainstays candles at either a Benton or Bryant, Arkansas Walmart.

12.     Two of these candles exploded burning his countertop in the fall of 2018 and summer of 2019.

13.     BJ Jones had to refinish his damaged countertop.

14.     Plaintiff Nikole Sutton is a resident of Arkansas.

15.     Nikole Sutton bought a Mainstays candle in Monticello, Arkansas.

16.     Her experience with Mainstays candles included them burning really high and popping.

17.     Nikole ended up throwing these candles away on her husband's request.

**CALIFORNIA**

18.     Plaintiff Dawn Ament is a resident of Santa Ana, California.

19.     Dawn Ament typically purchased various varieties and 2 to 3 Mainstays candles per month and 5 to 6 during the holiday months of November and December.

20.     These candles were typically purchased at a Santa Ana, California Walmart at 3600 W. McFadden Avenue.

21.     The variety of the candles was typically Garden Rain, Alpine Forest and Cinnamon.     22.     At least one of these candles emitted sparks.

23.     Plaintiff Scott T. Cark is a resident of Hemet, California.

24.     Scott T. Clark believes he purchased Mainstays candles from a Walmart in Temecula, California in December of 2017.

25.     Scott T. Clark believes the flavors were Hazelnut and Alpine Forest.

26.     These candles caused him minor personal injuries, including a couple of burned fingers and some singed hair.

27.     Plaintiff Debra Bell purchased a Mainstays candle on June 11, 2020.

4

28.     Debra Bell had a Mainstays candle start a fire that burned an inch and a half circle on the top of her piano.

29.     Plaintiff Chanda Brooks purchased a Mainstays candle on December 9, 2019.

30.     One of Chandra Brooks Mainstays candles exploded leaving carpet wax damage, scorched her ceiling and caused some wall discoloration in her home.

31.     Plaintiff Shawntrell Washington purchased Mainstay candles on April 1, 2018.

32.     One of Shawntrell Washington's candles sparked and spilled over and damaged her carpet and burning her arm and leg.

**FLORIDA**

33.     Plaintiff Brandon Bulger purchased a Mainstays candle on November 19, 2018.

34.     One of Brandon Bulger's candles had a wick that sparked and caught one of his display shelves on fire.

35.     Plaintiff Luanne Lagreca purchased a Mainstays candle on April 1, 2018.

36.     One of Luanne Lagreca's candles caused a large burn on her counter top.

**GEORGIA**

37.     Plaintiff Christy Rooker purchased Mainstays candles on August 18, 2018.

38.     Christy Rooker had three of the candles on a candle plate sitting on her wooden coffee table.

39.     These candles exploded, the candle plate burst into pieces and the wooden table caught fire.

40.     Christy Rooker's wooden table was burned too badly to repair.

**ILLINOIS**

41.     Plaintiff Valerie Taylor is a resident of Pontiac, Illinois.

42.     Valerie Taylor purchased Mainstays candles that produced excessive smoke.

43.     Plaintiff Brian Slafter is a resident of Centralia, Illinois.

44.     Brian Slafter bought a Garden Rain Mainstays candle at Walmart in either Centralia or Salem, Illinois in 2017 and/or 2018.

45.     Brian Slafter's experience with the candles did not involve personal injury or property damage but the candle burned extremely hot with high flames leaving soot on the side of same.

46.     Plaintiff Tenika Imaku purchased a Mainstays candle on February 20, 2020.

47.     Tenika Imaku's candle burned a corner in her hallway causing smoke damage to her walls.

48.     Plaintiff Rebecca Doolin purchased a Mainstays candle on March 24, 2020.

49.     Rebecca Doolin's candle burned so hot that she could not put it out and the soot covered her apartment

**MARYLAND**

50.     Plaintiff Robert Botterill is a resident of Libertytown, Maryland.

51.     Robert Botterill bought dark green Mainstays candles at a Walmart in Eldersberg, Maryland.

52.     Robert Botterill suffered minor personal injuries and property damage to his living room rug from his Mainstays candles.

53.     Specifically, on or about October 4, 2019 the candle started to burn out of control and he burnt himself trying to put it out.

54.     The candle ended up being knocked over and the wax ruined the living room rug.

55.     Plaintiff Keisha Nelson is a resident of Upper Marlboro, Maryland.

56.     Keisha Nelson bought several Mainstay candles at Walmarts in Bowie, Clinton and Severn, Maryland as well as some online.

57.     She began to notice that the candles would burn very hard and the flame would be enormous with the smoke very thick and black.

58.     The smoke from the candles made marks on her ceiling and walls.

59.     Only one of the Mainstays candles exploded getting wax on everything nearby.

**NEW JERSEY**

60.     Plaintiff Suhel Nazario purchased a Mainstays candle on October 1, 2016.

61.     Suhel Nazario's candle caused a house fire.

62.     Plaintiff Amy Metzinger purchased a Mainstays candle on August 3, 2020.

63.     When Amy Metzinger picked up her candle, it literally cracked in her hand and cut her finger.

**NEW YORK**

64.     Plaintiff Jacob Quill purchased a Mainstays candle on April 20, 2019.

65.     Jacob Quill's candle ruined a couch and table in his living room.

66.     Plaintiff Timothy E. Sherer is a resident of Orchard Park, New York.

67.     Timothy Sherer bought an Evergreen, scented Mainstays candle in December of 2018 at a Walmart at 2500 Walden Avenue, Cheektowaga, New York.

68.     The subject candle had a very high flame but did not cause any personal injury or property damage.

69.     Plaintiff Nancy Stockwell is a resident of Binghampton, New York.

70.     Plaintiff Nancy Stockwell bought a Mainstay's candle at a Walmart in either Johnson City or Vestal, New York.

71.     Nancy Stockwell's use of her Mainstay's candle did not result in a personal injury or property damage but did observe higher flames than normal.

**OREGON**

72.     Plaintiff Tonya McLemore is a resident of Portland, Oregon

73.     Tonya McLemore purchased many varieties of Mainstays candles.

74.     Most of these candles were purchased at a Walmart on 82nd Avenue in Portland, Oregon.

75.     These candles exploded four different times and caused her burns and cut from glass, wax damage to her table, carpet, clothes, and table cloth.

76.     The explosions led to glass and wax getting on her dog's back.

77.     Plaintiff Makahla Rutledge purchased a Mainstays candle on January 15, 2020.

78.     Makahla Rutledge's candle's glass started to crack due to the heat.

**PENNSYLVANIA**

79.     Plaintiff Deborah Reynolds is a resident of Hallam, Pennsylvania.

80.     Deborah Reynolds bought two Mainstays a week for years from Walmart store 1529 on East Market Street in York, Pennsylvania.

81.     Deborah Reynolds typically purchased Apple Pumpkin, Warm Apple Pie, Cinnamon and Mulled Cider varieties.

82.     Deborah Reynolds' Mainstays candles caused property damage and destroyed a tablecloth runner.

83.     Plaintiff Shannon McFarland is a resident of McKeesport, Pennsylvania.

84.     Shannon McFarland purchased Mainstay's candles in November of 2017.

85.     After Shannon McFarland lit the candles she went into the other room to put the lighter away and when she returned she saw that the flames were very large and sparking and emitting a lot of smoke and causing black marks on her wall and ceiling.

86.     When she ran over to blow the candles out and when she blew on them the flames grew and sparked and spit large drops of hot wax which landed on her face and hair burning her skin.

87.     After she finally got the candles extinguished she went to the bathroom to look at her face and remove the wax and when she peeled the wax off some skin came off and she was left with large red burn marks on her face and lips which were extremely painful and took weeks to heal.

88.     Plaintiff Mark Blanche Jr. purchased a Mainstays candle on April 21, 2019.

89.     Mark Blanche, Jr.'s candle exploded and the cushion to his window seat caught fire.

**TEXAS**

90.     Plaintiff Celia Williams is a resident of Texas.

91.     Celia Williams bought Mainstays candles at Walmart.

92.     These candles purchased busted and got wax on walls and carpet.

93.     Plaintiff Dolores Cunningham is a resident of Hurst, Texas.

94.     Dolores Cunningham purchased vanilla flavored Mainstays candles from the Hurst, Texas Walmart at 1732 Precinct Line Road for years at approximately $3.33 each.

95.     On at least three different occasions in both 2019 and 2020 the Mainstays

candles' glass jar cracked and got hot wax on her coffee table.

96.    Plaintiff Danielle Thomas is a resident of Round Rock, Texas.

97.    Danielle Thomas bought Mainstays candles from a Round Rock, Texas Walmart from 2011 to 2017.

98.    One of these candles flared up and burnt the top of a dresser.

99.    Plaintiff Lynette Wakefield purchased a Mainstays candle on April 2, 2020.

100.   Lynette Wakefield's nightstand was damaged when the candle got so hot it broke and burned it.

**WASHINGTON**

101.   Sarah Kingery purchased Mainstays candles for years.

102.   One of those candles blew up and got all over her room, destroyed a bag of clothing and her brand new laptop.

**DEFENDANTS**

103.   Defendant Walmart Inc. ("Walmart") is a corporation registered to do business in the State of Ohio.  Defendant's principal place of business is at 708 SW 8th Street, Bentonville, Arkansas 72716.

104.   Walmart can be served by serving its registered agent CT Corporation System at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

105.   Defendant CL Products International, LLC ("CL Products") is a limited liability company organized and existing under the laws of the state of Illinois, with is principal place of business in Cincinnati, Ohio.

106.   Defendant CL Products may be served at its principal place of business, 10521 Millington Court, Suite B, Cincinnati, Ohio, 45242.

107.     Defendant Candle-Lite Company, LLC ("Candle-Lite") is a limited liability company organized and existing under the laws of the state of Illinois, with is principal place of business in Cincinnati, Ohio.

108.     Defendant Candle-Lite may be served at its principal place of business, 10521 Millington Court, Suite B, Cincinnati, Ohio, 45242.

109.     Defendant Luminex Home Décor and Fragrance Company, LLC ("Luminex") is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in Cincinnati, Ohio.

110.     Defendant Luminex may be served through its registered agent, Corporate Creations Network, Inc., 119 E. Court Street, Cincinnati, Ohio, 45202.

111.     Venue is appropriate in the United States District Court for the Southern District of Ohio, because much of Defendants' false representations, misleading practices and unjust enrichment occurred in this District and elsewhere throughout the United States. Furthermore, Defendants CL Products, Candle-Lite and Luminex are based in this District.

112.     The United States District Court for the Southern District of Ohio has personal jurisdiction over Defendants because they transact business herein, with their various advertising methods and product sales directed toward residents of Ohio.

113.     Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member and Sub-Class Member is a citizen of a State different from any Defendant, there are more than 100 Class and Sub-Class Members, and the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

114.    Defendant Walmart is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce through Ohio and the United States.

115.    Defendant Walmart has advertised and sold Mainstays-branded candles to consumers and other purchasers throughout Missouri and the United States.

116.    Defendants CL Products, Candle-Lite and Luminex are, and/or at all relevant times were, in the business of manufacturing certain merchandise or retail products, including Mainstays candles, which are to be sold in trade or commerce at retail stores throughout Ohio and the United States.

117.    Mainstays is a Walmart house brand.

118.    During some or all of the time period from 2015 to the present, Defendants CL Products, Candle-Lite, and Luminex manufactured, sold and advertised Mainstays candles for sale by Defendant Walmart.  Mainstays candles are manufactured by Defendants CL Products, Candle-Lite and Luminex exclusively for Walmart and its subsidiaries.

119.    During some or all of the time period from 2015 to the present, Mainstays candles were sold by Defendant Walmart throughout Missouri and the United States as candles that were safe for use.

120.    At all relevant times, Mainstays candles contained labeling on the front of the candles, similar to the following:

12



121. At all relevant times, Mainstays candles contained labeling on the bottom of the candles, similar to the following:



122. Defendants' Mainstays candles did not contain any information or warning about excessive flames, flames that cannot be blown out or extinguished, flammable wax, candles that explode while burning or other defects and dangers. By labeling and selling Mainstays candles in this manner, Defendants sought to create, and did create, an image of the candles that would

lead a reasonable consumer to believe Defendants' Mainstays candles were completely safe for use.

123. Defendants' product labeling, advertising and marketing of their Mainstays candles were material to a reasonable consumer.

124. At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the candles were dangerous, lacking adequate warnings, and contained representations and omissions that were false, deceptive and misleading to consumers seeking to purchase the candles.

125. As a direct and proximate result of this occurrence, many of the Plaintiffs above suffered personal injuries and property damage due to their use of Defendants' candles.

126. Further, all the Plaintiffs above suffered damages as a result of the amounts paid for their candle's purchased.

127. Defendants had notice at least as early as March 2016 of other incidents in which Mainstays candles caused similar injuries and/or damages.

128. Prior to Plaintiffs' experiences, customers filed claims with Defendants for similar injuries and/or damages which the customers alleged to have been caused by Mainstays candles.

129. Prior to Plaintiffs' injuries, multiple customers called Defendant Walmart's customer service telephone hotline and/or posted on Walmart's Facebook page regarding dangerous experiences that they had with Mainstays candles. Customers described candles with flames several feet high that could not be blown out; candles in which all the wax was liquified and aflame; candles causing scorching or smoke damage to ceilings; and candles exploding while burning, creating a shower of glass, melted wax, and/or burning wax. On information and

belief, Defendants CL Products, Candle-Lite and Luminex were informed of or aware of these reports.

130. Since Plaintiffs' injuries, additional customers have reported similar incidents.

131. As of the filing of this Class Action Complaint, Defendants continue to manufacture and sell Mainstay candles. Further, Defendants have not warned their customers of the defect or instructed purchasers on how to handle situations in which the candles become engulfed in flames and/or explode. Defendants have failed to disclose the existence of this defect to Plaintiffs and other customers and purchasers, have failed to recall the defective candles, and have failed to reimburse Plaintiffs and other purchasers for the cost of purchasing the defective candles and/or the injuries and damages they suffered as a result of Defendants' conduct.

132. This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and other Class Members to Defendants for purchase of the Mainstays candles, for recovery of other damage caused to Plaintiffs and the Class Members by the Mainstays candles, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

133. Plaintiffs, in accordance with, and pursuant to, Rule 23 of the Federal Rules of Civil Procedure, brings this action on behalf of themselves and on behalf a Nationwide Class of similarly-situated individuals, defined as follows:

All persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after November 5, 2015, OR who suffered property damage and/or personal injury caused by

Mainstays candles purchased from Defendant Walmart Inc. or its subsidiaries in the United States on or after November 5, 2015, AND who meet the definition of one or more of the following subclasses:

(a) *Subclass I: Persons or other entities in the Class who purchased one or more Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States for personal or household purposes on or after November 5, 2015;*

(b) *Subclass II: Persons in the Class who suffered property damage as a result of a fire, high flames, candle flashover, and/or explosion attributed to the candle, whether or not the person suffering the damage was the purchaser of the candle.*

(c) *Subclass III: Persons in the Class who were injured as a result of a fire, high flame, candle flashover, and/or explosion attributed to the candle, whether or not the injured person was the purchaser of the candle.*

134. <u>Class Period</u>: The Class period is November 5, 2015 through present.

135. <u>Exclusions</u>: Excluded from the Class are:

(a) Any judge presiding over this action and the family members of any judge presiding over this action;

(b) Defendants, their subsidiaries, parents, successors, predecessors, any other entity in which Defendants or their parents have a controlling interest, and current or former offices and directors of Defendants, their subsidiaries, parents, successors, predecessors,

any other entity in which Defendants or their parents have a controlling interest;

(c)    Employees who have or had a managerial responsibility on behalf of Defendants, whose act or omission in connection with this matter may be imputed to Defendants for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of Defendants;

(d)    Persons who properly execute and file a timely request for exclusion from the Class;

(e)    The attorneys working on Plaintiffs' claims; and

(f)    Legal representatives, successors, or assigns of any such excluded persons.

136.    <u>Numerosity</u>: Upon information and belief, the Class Members include thousands of individuals, making their individual joinder herein impracticable.  Although Plaintiffs do not know the precise number of Class Members, the total number of Class Members is not expected to greatly exceed the number of members of Subclass I, which is ascertainable using Defendants' records of candle sales.  Members of Subclasses II and III are expected to primarily consist of subsets of the members of Subclass I.  A relatively small number of non-purchasers who were injured or damaged by a candle purchased by another person are expected in Subclasses II and III, but the total number of Subclass II and III members is expected to roughly correlate to a subset of the total number of candles sold.  Class Members may be notified of the pendency of this action by mail, email and/or published notice.

137. <u>Typicality</u>: Plaintiffs are members of Subclass I, Subclass II, and/or Subclass III. Plaintiffs' claims are typical of Subclass I because they paid for a defective Mainstays candle and suffered a corresponding loss in the amount of the purchase price. Plaintiffs' claims are typical of the members of Subclass II because the Mainstays candle they bought caused property damage from fire, heat, exploding glass and splattering wax when the candle burned too high and too hot, when the candle flashed over, and when the glass container exploded. Plaintiffs' claims are typical of the members of Subclass III because they suffered a burn injury when the candle burned too high and too hot, when the candle flashed over, and when the glass container exploded.

138. <u>Adequacy</u>: Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have retained competent and experienced counsel, and Plaintiffs intend to prosecute this action vigorously on behalf of the Class. The interest of Class Members will be treated fairly and adequately protected by Plaintiffs and their counsel.

139. <u>Predominance and Superiority</u>: This class action is appropriate for certification because common questions of fact and law, such as whether the candles were defective, and whether Plaintiffs and other Class Members were adequately warned, predominate over questions specific to individuals, such as damages. This class action is appropriate for certification because class proceedings are superior to all over available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. The damages suffered by most of the individual Class Members will likely be small relative to the burden and expense of individual prosecution of the complex litigation required to obtain recovery for the damages they sustained, and, in many cases, outweigh it altogether. This makes

it impractical and virtually impossible for the Class Members to obtain effective relief through individual suits.

140.    Even if Class Members were able to individually sustain such litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  A class action is preferable because it presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

141.    <u>Commonality</u>: Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual members. Such questions include, but are not limited to:

(a)    Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were defective as designed;

(b)    Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were defective as manufactured;

(c)    Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were negligently designed;

(d)    Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were negligently manufactured;

(e)     Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were negligently sold;

(f)     Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were accompanied by adequate warnings;

(g)     Whether Mainstays-branded candles sold by Defendants to Plaintiffs and other Class Members were accompanied by adequate instructions;

(h)     Whether Defendants had notice that the Mainstays-branded candles they sold to Plaintiffs and other Class Members were defective;

(i)     Whether Defendants were negligent by failing to recall the candles, discontinue selling the candles, or take other remedial action after they learned the candles were involved in fires, explosions, injuries and property damage that should not have resulted from ordinary use of the candles;

(j)     Whether Defendants' conduct relative to the production and sale of the candles constituted a deceptive or unfair practice within the scope of states' consumer protection acts;

(k)     Whether, and to what extent, Plaintiffs and other Class Members have sustained damages as a result of Defendants' conduct alleged herein; and

(l)    Whether Defendants' conduct merits the award of punitive damages.

## COUNT I - NEGLIGENCE

142.    Plaintiffs incorporate the above and foregoing paragraphs in their Class Action Complaint by reference as though fully set forth herein.

143.    Defendants knew, or by exercise of reasonable care, should have known that Mainstays candles sold to Plaintiffs and other Class Members were dangerous when used in an ordinary manner.

144.    Defendants had no reason to believe that Plaintiffs or other Class Members would realize that the candles were dangerous.

145.    Defendants owed Plaintiffs and other Class Members a duty of care.

146.    Defendants' duty of care to Plaintiffs and other Class Members included, but was not limited to, the following:

(a)    A duty to refrain, in the course of selling Mainstays candles, from actions and omissions that would cause a reasonably foreseeable risk of harm to Plaintiff and other Class Members;

(b)    A duty to refrain, in the course of marketing Mainstays candles, from actions and omissions that would cause a reasonably foreseeable risk of harm to Plaintiffs and other Class Members;

(c)    A duty to refrain, the course of causing and ordering the production of Mainstays candles, from actions and omissions would cause a reasonably foreseeable risk of harm to Plaintiffs and other Class Members;

(d)      A duty to take reasonable steps to mitigate reasonably foreseeable risk of harm to Plaintiffs and other Class Members caused by the use of candles Defendant sold, marketed, and ordered to be manufactured;

(e)      A duty to adequately warn Plaintiffs and other Class Members of the reasonably foreseeable risks of harm from the use of Mainstays candles they sold and marketed;

(f)      A duty to utilize adequate testing and institute other controls to ensure Mainstays candles were safe for ordinary use; and

(g)      A duty to supply Plaintiffs and other Class Members with adequate instructions regarding the safe use of Mainstays candles they sold and marketed.

147.    Defendants breached their duty of care to Plaintiffs and other Class Members, and were thereby negligent, through their acts and omissions, including but not limited to, the following:

(a)      Producing and selling candles without requiring reasonably safe specifications for the candles and their components when Defendants knew, or by exercise of reasonable care, should have known, that injuries to Plaintiffs and other Class Members were reasonably likely to result from their failure to do so;

(b)      Producing and selling candles without requiring safety testing and adequate quality control when Defendants knew, or by exercise of reasonable care, should have known, that injuries to Plaintiffs and

22

other Class Members were reasonably likely to result from their failure to do so;

(c)     Manufacturing and selling candles that Defendants knew, or by exercise or reasonable care, should have known, could not be burned without unreasonable risk of injury and property damage;

(d)     Continuing to manufacture and sell Mainstays-branded candles after Defendants received reports of the candles functioning unsafely, causing injury, causing property damage, burning out of control, flashing over, burning with excessively high flames, and/or exploding during use, when Defendants knew, or by exercise of reasonable care, should have known, that continuing to sell them was reasonably likely to result in injuries to Plaintiffs and other        Class Members;

(e)     Failing to take any remedial or corrective action in response to reports of Mainstays candles functioning unsafely, causing injury, causing property damage, burning out of control, flashing over, burning with excessively high flames, and/or exploding during use, when Defendants knew, or by exercise of reasonable care, should have known, that failing to do so was reasonably likely to result in injuries to Plaintiffs and other Class Members;

(f)     Manufacturing and selling Mainstays candles without adequate warning to Plaintiffs and other Class Members about the risk of harm from burning the candles when Defendants knew, or by

exercise of reasonable care, should have known, that injuries to Plaintiffs and other Class Members were reasonably likely to result from doing so;

(g)    Manufacturing and selling Mainstays candles without adequate warning to consumers about the risk of burning wax and/or explosions when Defendants knew, or by exercise of reasonable care, should have known, that injuries to Plaintiffs and other Class Members were reasonably likely to result from doing so;

(h)    Manufacturing and selling Mainstays candles without providing adequate safety instructions about how to safely extinguish a candle that began burning out of control, burning with high flames, or when the candle flashed over (the wax itself started burning,) when Defendants knew, or by exercise of reasonable care, should have known that, injuries to Plaintiffs and other Class Members were reasonably likely to result from doing so; and

(i)    Manufacturing and selling Mainstays candles without providing adequate safety instructions about how to recognize that a candle had become dangerous and how to respond when Defendants knew, or by exercise of reasonable care, should have known, that injury to Plaintiffs and other Class Members was reasonably likely to result from doing so.

148. Defendants knew, or by exercise of reasonable care, should have known, that the aforesaid breaches of duty were reasonably likely to result in injury or damage to Plaintiffs and other Class Members.

149. As a direct and proximate result of Defendants' negligence, Plaintiffs were injured and damaged as set forth above.

150. As a direct and proximate result of Defendants' negligence, all members of Subclass I were damaged in the amount they paid for the candles they purchased from Defendants.

151. As a direct and proximate result of Defendants' negligence, all members of Subclass II were damaged in the amount equal to the value or diminution in value of their damaged property and the value of their lost time and disruption of daily activities while responding to such property damage.

152. As a direct and proximate result of Defendants' negligence, all members of Subclass III sustained a personal injury and suffered damages in the amount necessary to fairly compensate for medical bills and expenses incurred as a result of the injury, the value of lost income, the value of lost time and disrupted daily activities, the compensatory value of any resultant physical disability or disfigurement, and/or emotional distress.

153. By selling Mainstays candles to Plaintiffs and other Class Members after Defendants received multiple complaints that the candles were dangerous, Defendants acted outrageously, recklessly and with willful disregard for the rights of others, and in a manner warranting punitive damages to punish Defendants' conduct and to deter similar future conduct by Defendants or others.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count I of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

### COUNT II - RES IPSA LOQUITUR
### (IN THE ALTERNATIVE TO COUNT I)

154. Plaintiff incorporates the above and foregoing paragraphs in her First Amended Class Action Complaint by reference as though fully set forth herein.

155. The incident in which Plaintiffs were injured, as described above within this Class Action Complaint, are incidents of the type that ordinarily occurs as a result of negligence by a manufacturer and/or seller.

156. Excessively high flames, candle flashover (*i.e.*, the entire fuel pool burning), and exploding glass are not things that normally occur when a candle is burned in the ordinary manner.

157. There is no reason that excessively high flames, candle flashover, and exploding glass could have resulted from burning a candle in the ordinary manner, without a negligent act or omission of Defendants.

158. The incidents described above in this Class Action Complaint were caused by instrumentalities Defendants managed and had the right to control.

159. Defendants managed or had the right to control the following instrumentalities that contributed to cause the incidents described above Class Action Complaint:

(a) Employees and agents of Defendants who created and communicated specifications to the factory for the manufacture of Mainstays candles;

(b) Employees and agents of Defendants who failed to take remedial or corrective action in response to reports of Mainstays candles functioning unsafely, causing injury, causing property damage, burning out of control, burning with high flames, and/or exploding during use; and

(c) The composition and design of the candle.

160. Plaintiffs did nothing to modify or alter the candle.

161. Plaintiffs did nothing to misuse the candle or introduce any foreign material to the candle.

162. Other members of Subclass II and Subclass III experienced incidents similar to the incidents Plaintiffs experienced.

163. Defendants have superior knowledge and access to information about the cause of the incident that is the subject of this Class Action Complaint in at least the following respects:

(a) Defendants have superior knowledge of the requirements and specifications provided to the manufacturers of the candles;

(b) Because Mainstays is a house brand manufactured exclusively for Walmart and its subsidiaries, Defendants have superior knowledge of, or have access to, the formula of the wax used in the candles, the material used for the wick, the composition and tolerances of the glass containing the candle;

(c) Because Mainstays is a house brand manufactured exclusively for Walmart and its subsidiaries, Defendants have superior knowledge

of, or access to, information about any testing or quality control measures implemented with respect to the production of the candles;

(d)     Defendants have superior knowledge of the process and considerations involved in product labeling, usage instructions, and safety warnings for the candles; and

(e)     Defendants have superior knowledge of the complaints and notifications of candles burning out of control or exploding that Defendants received prior to Plaintiffs' injuries and damages.

164.     Defendants knew, or by exercise of reasonable care, should have known, that their negligence was reasonably likely to result in injury or damage to Plaintiffs and other Class Members.

165.     As a direct and proximate result of Defendants' negligence, Plaintiffs were injured and damaged as set forth above in this Class Action Complaint.

166.     As a direct and proximate result of Defendants' negligence, all members of Subclass I were damaged in the amount they paid for the candles they purchased from Defendants.

167.     As a direct and proximate result of Defendants' negligence, all members of Subclass II were damaged in the amount equal to the value or diminution in value of their damaged property and the value of their lost time and disruption of daily activities while responding to such damage.

168.     As a direct and proximate result of Defendants' negligence, all members of Subclass III sustained a personal injury and suffered damages in the amount necessary to fairly

compensate for medical bills and expenses incurred as a result of the injury, the value of lost income, the value of lost time and disrupted daily activities, the compensatory value of any resultant physical disability or disfigurement, and/or emotional distress.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count II of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

## COUNT III - STRICT LIABILITY
## DEFECTIVE PRODUCT DESIGN AND MANUFACTURE

169.     Plaintiffs incorporate the above and foregoing paragraphs in this Class Action Complaint by reference as though fully set forth herein.

170.     Defendants sold the Mainstays candles that are the subject of this Class Action Complaint in the course of their business.

171.     The candles were produced exclusively for Defendant Walmart and its subsidiaries.

172.     Defendants had the right to control and did control the design of the Mainstays candles sold to Plaintiffs.

173.     At the time the candles were sold to Plaintiffs, they were in a defective condition that was unreasonably dangerous when put to reasonably anticipated use.

174.     Plaintiffs used the candle in a manner reasonably anticipated by placing it on a non-flammable, level surface away from any flammable materials and lighting the wick.

175.    Defendants sold Mainstays candles to other Class Members that were in a similarly defective condition and unreasonably dangerous when put to reasonably anticipated use.

176.    The candles were defectively designed in the following respects:

(a)    Failure to specify adequate heat strength of the candle's glass container, including but not limited to appropriate scratch test and temper specifications;

(b)    Failure to design the candle's glass container with adequately thick glass in a shape proportionately appropriate to the burn rate of the wick with the wax and additives used in the candle, such that the candle would not be prone to excessive pooling, tunneling, or other conditions likely to overheat the wax;

(c)    Failure to specify wick characteristics (*e.g.*, wick material, diameter, shape, stiffness, fire resistance, pretreatments) that were safe to use with the candle container and the wax formulation and additives (*e.g.*, fragrance, colorant, dye, pigment, Vybar, triple pressed stearic acid, palm stearic, UV absorbers, petrolatum) used in the candle;

(d)    Failure to specify a formula for wax and additives which, when combined in the finished candle, demonstrated oil content, flash point, melting point, and ignition point that were safe for the combination of the candle's container and wick;

(e)    Failure to design to limit the flame height to three inches or less;

(f)    Failure to design to meet industry standards for end of useful life of the candle;

(g)    Failure to adequately test the candle's design for safety and adherence to industry standards;

(h)    Failure to write instructions to accompany the candle which would inform consumers how to safely extinguish a candle that began burning out of control, burning with flames more than three inches high, or when the candle flashed over (the wax itself started burning); and

(i)    Any other design defects discovered in the course of this litigation.

177.    The candles were defectively manufactured in the following respects:

(a)    Failure to adhere to the design specifications for the candle's glass container;

(b)    Use of glass of excessively flawed or inconsistent quality;

(c)    Use of inadequately tempered glass;

(d)    Failure to conduct scratch tests of the glass container and failure to test its temper;

(e)    Failure to use the appropriate wick for the candle container and the combination of wax and additives (*e.g.*, fragrance, colorant, dye, pigment, Vybar, triple pressed stearic acid, palm stearic, UV absorbers, petrolatum) used in the candle;

(f)    Failure to treat the wick with additives to ensure that it was sufficiently flame retardant for use in the candle;

(g)  Failure to use wax and additives which, when combined in the finished candle, demonstrated oil content, flash point, melting point, and ignition point that were safe for the combination of the candle's container and wick;

(h)  Failure to test the oil content, flash point, melting point, and ignition point of the finished candle;

(i)  Failure to test the candle's flame height to ensure that it did not exceed three inches;

(j)  Failure to adequately test the candle for safety and adherence to industry standards;

(k)  Failure to conduct quality control testing for consistency (*e.g.*, minimal variability) of the candle quality with respect to safety characteristics;

(l)  Inclusion of foreign materials in the candle wax;

(m)  Failure to provide instructions with the candle about how to safely extinguish a candle that began burning out of control, burning with flames more than three inches high, or when the candle flashed over (the wax itself started burning); and

(n)  Any other manufacturing defects discovered in the course of this litigation.

178.  The incidents described above in this Class Action Complaint were caused by the defective Mainstays candles Defendants sold to Plaintiffs.

179.    Other Members of Subclass II and Subclass III experienced similar incidents to Plaintiff's experience, as described above in this Class Action Complaint, when defective Mainstays candles sold by Defendants were put to reasonably anticipated use.

180.    As a direct and proximate result of the design defects and manufacturing defects herein described, Plaintiffs were injured and damaged as set forth above in this Class Action Complaint.

181.    As a direct and proximate result of the design defects and manufacturing defects herein described, all members of Subclass I were damaged in the amount they paid for the candle they purchased from Defendants.

182.    As a direct and proximate result of the design defects and manufacturing defects herein described, all members of Subclass II were damaged in the amount equal to the value or diminution in value of their damaged property and the value of their lost time and disruption of daily activities while responding to the property damage.

183.    As a direct and proximate result of the design defects and manufacturing defects herein described, all members of Subclass III sustained a personal injury and suffered damages in the amount necessary to fairly compensate for medical bills and expenses incurred as a result of the injury, the value of lost income, the value of lost time and disrupted daily activities, the compensatory value of any resultant physical disability or disfigurement, and/or emotional distress.

184.    Defendants acted outrageously, recklessly and with willful disregard for the rights of others, and in a manner warranting punitive damages to punish their conduct and to deter similar future conduct by Defendants or others.  Punitive damage are warranted by Defendants' willful disregard for the life-threatening consequences of selling candles that Defendants had

reason to know were not safely designed and manufactured, and because Defendants continued to sell defective Mainstays candles even after receiving notice that they were unsafe, flashing over, starting fires, and exploding.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count III of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

## COUNT IV - STRICT LIABILITY – FAILURE TO WARN

185. Plaintiffs incorporate the above and foregoing paragraphs in this Class Action Complaint by reference as though fully set forth herein.

186. Defendants sold the Mainstays candles that are the subject of this Class Action Complaint in the course of their business.

187. At the time the candles were sold to Plaintiffs and the other Class Members, they were unreasonably dangerous when put to reasonably anticipated use without the user's knowledge of all the candle's dangerous characteristics.

188. Defendants did not provide Plaintiffs and other Class Members adequate warning about the dangers from using the candle.

189. The incidents described above in this Class Action Complaint occurred when Plaintiffs used the candle in a manner reasonably anticipated by placing it on a non-flammable, level surface away from any flammable materials and lighting the wick.

190.    Other members of Subclass II and Subclass III experienced incidents similar to Plaintiffs', as described in above in this Class Action Complaint, after defective Mainstays candles sold by Defendants were used in a similarly reasonably anticipated manner.

191.    Defendants did not warn Plaintiff and other Class Members of the following:

(a)    That if the flames got high, the candle was unsafe and should be extinguished;

(b)    That the candle wax might get so hot while the candle was lit that all or most of the candle wax would liquify, and that if that happened, the candle was unsafe and should be extinguished;

(c)    That the entire pool of melted wax might catch on fire ("flash over");

(d)    That if the candle flashed over, the temperature would be significantly hotter and pose a greater fire hazard than a properly burning candle; and

(e)    That the glass container might break or explode, propelling broken glass and/or burning or melted wax.

192.    Defendants did not provide any warning or instruction to Plaintiffs and other Class Members regarding recognizing when the candle was burning unsafely and how to safely extinguish it under such circumstances.

193.    Defendants had no reason to believe that ordinary consumers, such as Plaintiffs and other Class Members, would be aware of the aforementioned risks and dangers.

194.    As a direct and proximate result of Defendants' failure to provide adequate warnings, Plaintiffs were injured and damaged as set forth above in this Class Action Complaint.

195.    As a direct and proximate result of Defendants' failure to provide adequate warnings, all members of Subclass I were induced to buy candles that they otherwise would not have chosen to buy, and were damaged in the amount they paid for the candle they purchased from Defendants.

196.    As a direct and proximate result of Defendants' failure to provide adequate warnings, all members of Subclass II were damaged in the amount equal to the value or diminution in value of their damaged property and the value of their lost time and disruption of daily activities while responding to the property damage.

197.    As a direct and proximate result of Defendants' failure to provide adequate warnings, all members of Subclass III sustained a personal injury and suffered damages in the amount necessary to fairly compensate for medical bills and expenses incurred as a result of the injury, the value of lost income, the value of lost time and disrupted daily activities, the compensatory value of any resultant physical disability or disfigurement, and/or emotional distress.

198.    Defendants acted outrageously, recklessly and with willful disregard for the rights of others, and in a manner warranting punitive damages to punish Defendants' conduct and to deter similar future conduct by Defendants or others.

199.    Punitive damages are warranted because Defendants were aware of life-threatening risks that ordinary consumers would not have knowledge of, but nevertheless chose not to provide warnings.

200.    Punitive damages are warranted because Defendants continued to sell candles without adequate warning even after receiving notice dangerous incidents were occurring that

might be prevented by adequate warnings, and after receiving notice that consumers did not know how to extinguish the candles after they flashed over or exploded.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count IV of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

## COUNT V - UNJUST ENRICHMENT

201.    Plaintiff incorporates the above and foregoing paragraphs in this Class Action Complaint by reference as though fully set forth herein.

202.    When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and other Class Members the Mainstays candles, Defendants knew the products were negligently and improperly manufactured and sold as described above.

203.    As a result, Plaintiffs and other Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the products were different than what Defendants represented; (d) were deprived of the benefit of the bargain because the products had less value than what was represented; (e) did not receive products that measured up to their expectations as created by Defendants; (f) did not receive a product that was suitable for use as a candle for home or indoor use; and (g) suffered damage as a result of purchase and use of the products.

204.    As a result of Defendants' deceptive, negligent and misleading labeling, advertising, marketing, manufacturing and sales of the Mainstays candles, Plaintiffs and other Class Members purchased Defendants' products and conferred a benefit upon Defendants by purchasing products that were not as advertised and were not suitable for use as candles for home and indoor use, which benefit Defendants appreciated and accepted.

205.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the products.

206.    Defendants were enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for Defendants' Mainstays candles.

207.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and other Class Members have suffered damages in an amount to be determined at trial.

208.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and other Class Members, in light of the fact that the Mainstays candles purchased by Plaintiffs and other Class Members were not what Defendants represented them to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the Mainstays candles.

209.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and other Class Members.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count V of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

### COUNT VI – VIOLATION OF CONSUMER PROTECTION STATUTES

210. Plaintiffs incorporate the above and foregoing paragraphs in this Class Action Complaint by reference as though fully set forth herein.

211. This count is brought pursuant to the respective consumer protection statutes of Alaska, Arizona, California, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Montana, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Tennessee, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

212. Defendants sold the defective and dangerous Mainstays candles throughout the United States during the Class Period.

213. In selling their Mainstays candles and by virtue of the conduct set forth above, Defendants have used deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of material facts, either expressly or by implication.

214. Defendants intentionally and knowingly used deception, false pretense, false promise, misrepresentation and/or concealment of material facts regarding the Mainstays candles with intent to mislead Plaintiff and other Class Members.

215. At all times material hereto, it was reasonably foreseeable that Plaintiff and others similarly situated would rely on the false and deceptive statements and conduct of Defendants. Said reliance has caused Plaintiff and other Class Members who are similarly situated, to be damaged.

216. Defendants' conduct alleged herein violated the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471 et seq., and any related administrative regulations.

217. Defendants' conduct alleged herein violated the Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 et seq.

218. Defendants' conduct alleged herein violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 et seq., the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., and/or the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500.1 et seq.

219. Defendants' conduct alleged herein violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. §§ 42-110(a) et seq.

220. Defendants' conduct alleged herein violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. and/or the Florida Misleading Advertising statute, Fla. Stat. § 817.41 et seq.

221. Defendants' conduct alleged herein violated the Hawaii Unfair Practices and Unfair Competition Act, HRS § 480-1 et seq.

222.     Defendants' conduct alleged herein violated the Idaho Consumer Protection Act, I.C. §§ 48-601 et seq.

223.     Defendants' conduct alleged herein violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et seq.

224.     Defendants' conduct alleged herein violated the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 et seq.

225.     Defendants' conduct alleged herein violated the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-634 et seq.

226.     Defendants' conduct alleged herein violated the Kentucky Consumer Protection Act, K.R.S. §§ 367.110 et seq.

227.     Defendants' conduct alleged herein violated the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A et seq., the Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211 et seq.

228.     Defendants' conduct alleged herein violated the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. L. Ch. 93A, §§ 9 et seq.

229.     Defendants' conduct alleged herein violated the Michigan Consumer Protection Act, M.C.L. §§ 445.901 et seq.

230.     Defendants' conduct alleged herein violated the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.44 et seq.

231.     Defendants' conduct alleged herein violated the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 et seq., the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 et seq.

232.    Defendants' conduct alleged herein violated New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. § 358-A:l et seq.

233.    Defendants' conduct alleged herein violated the New Mexico Unfair Trade Practices Act, N.M. Stat. § 57-12-1 et seq.

234.    Defendants' conduct alleged herein violated New York General Business Law §§ 349 and 350.

235.    Defendants' conduct alleged herein violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 et seq

236.    Defendants' conduct alleged herein violated the North Dakota Unfair Trade Practices Law, N.D. Cent. Code §§ 51-10-01 et seq., and any related administrative regulations.

237.    Defendants' conduct alleged herein violated the Ohio Consumer Sales Practices Act, ORC § 1345.01 et seq.

238.    Defendants' conduct alleged herein violated the Oklahoma Consumer Protection Act, OK ST T. 15 § 751 et seq.

239.    Defendants' conduct alleged herein violated the Oregon Unlawful Trade Practices Act, OR ST 646.605 et seq.

240.    Defendants' conduct alleged herein violated the Pennsylvania Unfair Trade Practices and Consumer Fraud Law, 73 Pa. Stat. Ann. §§ 201-1 et seq.

241.    Defendants' conduct alleged herein violated the Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I.G.L. §§ 6-13.1-1 et seq.

242.    Defendants' conduct alleged herein violated the South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws §§ 37-24-1 et seq.

243.    Defendants' conduct alleged herein violated the Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code §§17.41 et. seq.

244.    Defendants' conduct alleged herein violated the Vermont Consumer Fraud Act, 9 V.S.A. §§2451 et seq.

245.    Defendants' conduct alleged herein violated the Washington Consumer Protection Act, RCW 19.86.010 et seq.

246.    Defendants' conduct alleged herein violated the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq.

247.    Defendants' conduct alleged herein violated the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18(1) et seq.

248.    Defendants' conduct alleged herein violated the Wyoming Consumer Protection Law, W.S. §§ 40-12-101 et seq.

249.    As a direct and proximate result of Defendants' violations, Plaintiff and other Class Members have been injured in an amount to be established at trial.

250.    As a further result of Defendants' violations, Plaintiff and Class Members are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore Plaintiff and Class Members any money paid for the candles.

251.    The actions of Defendants were done willfully, intentionally and with reckless disregard for harm that would be caused to Plaintiff and other Class Members who are similarly situated, and Defendants' conduct warrants imposition of exemplary, statutory and/or damages to deter Defendants, and others in similar circumstances, from committing such actions in the future.

252.    Plaintiff has standing to pursue these claims as she has suffered actual economic damage as a proximate result of Defendants' actions as set forth herein.

253.    An award of punitive damages is also appropriate.

WHEREFORE, for the above and foregoing reasons, Plaintiffs pray for judgment for themselves and other Class Members under Count VI of this Class Action Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiffs' costs herein incurred, for pre- and post- judgment interest, and for all other relief this Court determines to be just and necessary.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

Respectfully submitted,

/s/ Gregory S. Reichenbach
Gregory S. Reichenbach (Ohio Bar #0077876)
P.O. Box 711
Perrysburg, OH 43552-0711
(419) 529-8300
FAX: (419) 529-8310
Email: Greg@ReichenbachLaw.com

WHITE GRAHAM BUCKLEY
& CARR, LLC
Gene P. Graham, Jr., MO #34950
William L. Carr, MO#40091
Bryan T. White, MO #58805
19049 E. Valley View Pkwy, Ste. 200
Independence, MO 64055
Telephone: 816-373-9080
Facsimile:  816-373-9319
ggraham@wagblaw.com
bcarr@wagblaw.com
bwhite@wagblaw.com
(*pro hac vice* forthcoming)

WADDELL LAW FIRM, LLC
A. Scott Waddell, MO#53900
1900 W. 75th Street, Suite 220
Prairie Village, Kansas 66208
scott@aswlawfirm.com
Telephone: 816-914-5365
(*pro hac vice* forthcoming)

PLAYTER & PLAYTER, LLC
Eric S. Playter, MO #58975
Chris R. Playter, MO #65109
400 SW Longview Boulevard, Suite 220
Lee's Summit, MO 64081
eric@playter.com
chris@playter.com
Telephone:  (816) 666-8902
Facsimile:  (816) 666-8903
(*pro hac vice* forthcoming)

MCINNES LAW LLC
Jack D. McInnes, MO #56904
Benjamin Ashworth, MO #67933
Rob Wasserman, MO #69418
1900 W. 75th Street, Suite 220
Prairie Village, Kansas 66208
jack@mcinnes-law.com
ben@mcinnes-law.com
rob@mcinnes-law.com
Telephone: 913-220-2488
Facsimile: 913-273-1671
(*pro hac vice* forthcoming)