**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

AMANDA IVANOFF, *et al.*,

    *Plaintiffs*,

v.

WALMART INC.,
CL PRODUCTS INTERNATIONAL,
LLC,
LUMINEX HOME DÉCOR AND
FRAGRANCE COMPANY, LLC, AND
CANDLE-LITE COMPANY, LLC,

    *Defendants*.

Case No. 1:20-cv-00896-JPH

Judge Jeffery P. Hopkins

---

## OPINION AND ORDER

The old saying goes: "From small things, we build cathedrals." This case affirms the wisdom of that belief. From small things—a single test of an 11.5 oz. vanilla Mainstays-branded candle—Named Plaintiffs (or "Plaintiffs") build the cathedral that *every* Mainstays-branded candle manufactured over the past decade has dangerous defects and unconscionable safety risks. From small things—a few undated consumer complaints and other Facebook posts—Plaintiffs build the cathedral that Defendants had exclusive knowledge that *every* Mainstays-branded candle has dangerous defects, that Defendants have fraudulently concealed those defects, and that Defendants have materially misrepresented the safety of the candles. From small things—a few of the many manufacturers of Mainstays-branded candles—Plaintiffs build the cathedral that Defendants CL Products International, LLC, Luminex Home Décor and Fragrance Company, LLC, and Candle-lite Company, LLC (collectively, "Candle-lite Defendants") are liable for every mere purchase of the candle(s),

even those that the Candle-lite Defendants did not manufacture. But the cornerstones of each of these cathedrals are laid on ground unshored by factual support or reasonable inference. As currently pleaded, the overarching theory of liability that Plaintiffs urge this Court to validate—one of Defendants' conscious wrongdoing, active concealment, and deliberate fraudulence—has not crossed the threshold from conceivability into plausibility.

Here, Named Plaintiffs are eighty-seven purchasers of Defendant Walmart, Inc.'s ("Walmart") Mainstays-branded candles. The proposed class action lawsuit alleges negligence, unjust enrichment, and thirty-six separate counts of violations of state consumer protection and unfair competition statutes and deceptive trade practices laws. *See* Second Am. Compl., Doc. 35. This matter is before the Court on the Motions to Dismiss the Second Amended Class Action Complaint (the "Motions to Dismiss") filed by Defendant Walmart and Candle-lite Defendants on January 6, 2022, and December 23, 2021, respectively. Docs. 38, 39. Named Plaintiffs filed their Joint Opposition to Defendants' Motions to Dismiss on February 21, 2022. Doc. 43.

For the reasons set forth below, the Court **GRANTS** Candle-lite Defendants' Motion to Dismiss **WITHOUT PREJUDICE**. Doc. 38. The Court **GRANTS IN PART AND DENIES IN PART** Walmart's Motion to Dismiss **WITHOUT PREJUDICE**. Doc. 39. The Court defers consideration of the following three claims against Walmart until Plaintiffs re-establish this Court has subject matter jurisdiction: Count XXVII (Violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 (McKinney 2014), *et seq*.), Count XXVIII (Violation of the New York Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350 (McKinney 2014), *et seq*.), and Count XXXII (Violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. §§ 201-2, 201-3 (West 2024), *et seq.*).

The Court **ORDERS** Plaintiffs to file a Third Amended Class Action Complaint within **forty-five (45) days** of the filing date of this Order. By separate Order, the case will be **REFERRED** to the Magistrate Judge whereupon the parties will be instructed to meet to ensure adequate discovery has been exchanged. The Court retains jurisdiction over this action unless it is later determined that the Court lacks subject matter jurisdiction. Plaintiffs' Motion to Certify Class (Doc. 68), Defendants' Joint Motion to Strike Motion to Certify Class (Doc. 69), and Defendants' Joint Motions for Extension of Time to Respond to Plaintiffs' Motion to Certify Class (Docs. 70, 71) are **DENIED AS MOOT**.

## I.    BACKGROUND

### A. Factual Background

This action arises out of an undefined defect alleged to be in every single Mainstays-branded candle manufactured, marketed, or sold by Defendants since 2016.[1] Am. Compl., ¶ 1. As noted, eighty-seven Named Plaintiffs filed a 250-page Second Amended Class Action Complaint (hereinafter, "Second Amended Complaint") and alleged a variety of injuries resulting from a "serious safety-related defect in the design and manufacture" of Mainstays-branded candles that cause the candles to become "engulfed in flames" and "explod[e]." *Id.* The Named Plaintiffs hail from thirty-eight different states and the District of Columbia. Doc. 38, PageID 757. Each Named Plaintiff purchased a Mainstays-branded candle between 2016

---

[1]    As discussed below, Plaintiffs oscillate between March 15, 2015 and March 4, 2016 as the commencement date of their claims. *Cf.* Second Am. Compl., ¶ 434 *with* Doc. 43, PageID 885. The Court will use 2016 as the governing year, although the Court notes the period of Plaintiffs' proposed class definitions begins on March 15, 2015.

and 2021 that allegedly had "the propensity to cause the dangerous burning and exploding actions," and which, in turn, caused some of the injuries for which they now seek relief. *See* Second Am. Compl., ¶¶ 63–64, 68–422. Named Plaintiffs assert thirty-eight separate claims for negligence (Count I), unjust enrichment (Count II), and violations of thirty-six consumer protection and unfair competition statutes, and deceptive trade practice laws from thirty-eight different jurisdictions (Counts III–XXXVIII). *Id.* ¶¶ 444–1094. Based on these allegations, Named Plaintiffs seek to certify thirty-nine different proposed classes (thirty-eight state classes including the District of Columbia and a nationwide class) and an additional 116 state-specific sub-classes. *Id.* ¶¶ 434–43.

The four Named Defendants are the retailer and a few manufacturers of Mainstays-branded candles.[2] *See id.* ¶¶ 44–47. Defendant Walmart, an Arkansas corporation, advertises and sells Mainstays-branded candles to consumers throughout the United States. *Id.* ¶¶ 44, 51. Candle-lite Defendants are limited liability companies organized under Illinois law (CL Products International, LLC and Candle-lite Company LLC) and Delaware law (Luminex Home Décor and Fragrance Company, LLC), with principal places of business in Cincinnati, Ohio. *Id.* ¶¶ 45–47. Candle-lite Defendants are only a few of the multiple vendors that manufacture Mainstays-branded candles. Doc. 38, PageID 762. Although the Court is unfamiliar with the precise details of the business arrangement, manufacturers of Mainstays-branded candles will produce or will not produce particular size(s) or scent(s) of candles. Doc. 49, PageID 989.

---

[2] Plaintiffs name Candle-lite Defendants as the sole manufacturer of Mainstays-branded candles in their Second Amended Complaint. That said, in its Motion to Dismiss and at the February 26, 2025 hearing, Candle-lite Defendants represented that there are several other vendors who manufacture Mainstays-branded candles for Defendant Walmart. *See* Doc. 38, PageID 762.

The allegedly defective candles at issue here are Walmart's Mainstays-branded candles. These candles are sold by Defendant Walmart at many of its stores (as well as its subsidiaries' stores), and at least some of these candles were or are manufactured by Candle-lite Defendants. Second Am. Compl., ¶¶ 51–56. The Mainstays-branded candles come in at least seven different candle sizes, two types of wick counts, and over thirty-nine different fragrances with varying chemical formulas and additives. The many combinations of the different additives cause the candles' diverse array of scents and colors.

The parties dispute whether the warning label and instructions present on Mainstays-branded candles adequately alert customers to the risks associated with the candles. *Id.* ¶ 60. Plaintiffs assert the candles contain no warning or information related to "excessive flames, flames that cannot be blown out or extinguished, flammable wax, [or] candles that explode while burning." *Id.* Defendants contend the candles come with instructions and a warning against at least seven different types of usage to prevent fire hazards. Doc. 39, PageID 842–43. In the Second Amended Complaint, Plaintiffs attached a photo of a label at the bottom of a vanilla-scented Mainstays-branded candle. Second Am. Compl., ¶ 59. That label, which is alleged to be on every Mainstays-branded candle "[a]t all relevant times," contains the following text:

> WARNING: Burn within sight. Burn on heat-resistant surface away from things that catch fire … To prevent FIRE HAZARD, READ ALL INSTRUCTIONS prior to use. STOP USE when ½" (12.7 mm) of unmelted wax remains, as glass may shatter. EXTINGUISH every 4 hours and allow to cool. TRIM wick to ¼" (6.3 mm) prior to each use to reduce soot. Do not allow flame to touch glass. Keep wax pool free of wick trimmings [and] any foreign matter. Do not move a lit candle….

*Id.*

5

Named Plaintiffs plead a smorgasbord of differing injuries and requests for damages. *Id.* ¶¶ 68–422. The alleged harm suffered by Plaintiffs runs the entire spectrum of a Mainstays-branded candle "burn[ing] extremely hot with high flames leaving soot on the side of the candle" to a Mainstays-branded candle "emit[ting] sparks [that] caused a fire that burned down [a] townhouse." *Id.* ¶¶ 188, 401. The requests for relief range from the amount paid for the subject candle(s) to full compensation for personal injury, property damage, and damage to the subject candle(s), as well as for punitive damages. *Id.*, *passim*.

Named Plaintiffs claim that since March 2016, Defendants have been affirmatively misrepresenting the safety of the candles and "actively and fraudulently conceal[ing] the known defects associated with their" products.[3] *Id.*, *passim*. Plaintiffs also allege Defendants were negligent in manufacturing, marketing, and selling defective candles. *Id.* ¶ 449. Moreover, Plaintiffs aver Defendants "have not recalled their products nor provided any remedial effort … to this date." *Id.* ¶ 900. However, during oral argument on February 26, 2025, counsel for Candle-lite Defendants indicated that a voluntary market withdrawal of certain Mainstays-branded candles, facilitated by the U.S. Consumer Product Safety Commission, occurred in 2018. Thirty-nine different wax formulations (*i.e.*, fragrances) of Mainstays-branded candles were removed from Walmart's shelves and later reformulated with alternative additives. The U.S. Consumer Product Safety Commission subsequently

---

[3] Plaintiffs do not assert a standalone claim for fraudulent concealment. For all allegations, Plaintiffs contend "[s]ince March 2016, Defendants have actively and fraudulently concealed the known defects associated with their candles by continuing to market the candles as safe, even after receiving numerous complaints about their dangerous nature." Second Am. Compl., ¶¶ 456, 465. Plaintiffs admit they "do not plead a separate cause of action for fraudulent concealment" but maintain these assertions are "merely a procedural device used to toll the statute of limitations for the purpose of pleading conduct that may otherwise have occurred outside the relevant statutes of limitation." Doc. 43, PageID 959.

issued Defendants a "no further action letter" in July 2018 and allowed Defendants to resume manufacture and sales of Mainstays-branded candles. Furthermore, on February 23, 2023, a non-defendant manufacturer of Mainstays-branded candles issued a product recall of 1.2 million Mainstays-branded three-wick candles sold at Walmart stores between September 2022 and November 2022.[4] This recall was similarly facilitated by the U.S. Consumer Product Safety Commission.

### B. Procedural History

Two proposed class actions lawsuits were filed against Defendants in May and November of 2020. The first of these cases, which was filed in the Western District of Missouri, was captioned *Ellebracht et al. v. Walmart, Inc. et al.*, No. 4:20-cv-00361-BP. The second case, filed here, is the instant matter, *Ivanoff et al. v. Walmart, Inc. et al.*, No. 1:20-cv-00896-JPH. On May 26, 2021, counsel for Candle-lite Defendants moved to consolidate the cases and transfer venue to the Southern District of Ohio. *See Ellebracht et al.*, Br. for Defendants at 1 (No. 4:20-cv-00361), Doc. 62. Chief District Judge Beth Phillips granted the motion to transfer venue from the Western District of Missouri to the Southern District of

---

[4]  *See* U.S. Consumer Prod. Safety Comm'n, *More than 1.2 Million Mainstays Three-Wick Candles Recalled by Star Soap Star Candle Prayer Candle Due to Fire and Laceration Hazards; Sold Exclusively at Walmart*, https://www.cpsc.gov/Recalls/2023/More-than-1-2-Million-Mainstays-Three-Wick-Candles-Recalled-by-Star-Soap-Star-Candle-Prayer-Candle-Due-to-Fire-and-Laceration-Hazards-Sold-Exclusively-at-Walmart (last visited July 30, 2025).

A note on judicial notice: The Court's inquiry is limited to the four corners of the operative complaint and to any other materials permitted under Fed. R. Civ. P. 12(b)(6) and 10(c). *Jackson v. Maui Sands Resort, Inc.*, No. 1:08-cv-2972, 2009 WL 7732251, at *3 (N.D. Ohio Sept. 8, 2009). But a court ruling "on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). Thus, the Court takes judicial notice of the 2023 product recalls because this information is appropriate for the consideration of the Motions and because such information is in the public record. *See also Johnson v. Wal-Mart Stores E. Inc.*, No. 4:17-cv-1894, 2018 WL 1083269, at *3 (N.D. Ohio Feb. 28, 2018) (taking judicial notice that a court's decision was not on the Ohio Attorney General's Public Inspection File during a 12(b)(6) determination of a claim of defendant's knowledge of a fact).

Ohio on August 16, 2021. *See Ellebracht et al.*, No. 4:20-cv-00361, slip op. at *1 (W.D. Mo. Aug. 17, 2021). The consolidated *Ivanoff* case was originally assigned to the Honorable Michael R. Barrett before being reassigned to the undersigned on December 21, 2022.

Pending before the Court are Defendants' Motions seeking dismissal of Plaintiffs' class and individual claims for negligence (Count I), unjust enrichment (Count II), and violations of consumer protection and unfair competition statutes and deceptive trade practice laws (Counts III–XXXVIII). Docs. 38, 39. The parties appeared before the Court for oral argument on the Motions on February 26, 2025. The Motions are fully briefed and ripe for adjudication.

## II.    SUMMARY

The decision the Court reaches at this stage in the proceedings is a response to the sufficiency of the pleadings and the tenability of the proposed class action as currently alleged. Plaintiffs' insufficient pleadings compel the Court to strike the class action allegations against both Defendants and to dismiss the individual Named Plaintiff claims against the remaining Defendant Walmart. The Court does *not* dismiss these allegations with prejudice at this time. Nor does the Court conclude these deficiencies are incurable through additional amendment. But the sprawling range of issues—and the inadequate briefing on them—greatly complicate this Court's ability to promulgate a clear decision on the merits. These deficiencies in the pleadings relate to a lack of standing, a failing of predominance, the overbreadth of the proposed class definitions, and the dearth of sufficiency and specificity in the remaining individual state-law claims. A brief summary follows.

*Standing (injury-in-fact)*. Individual standing is a "prerequisite for all suits, including class actions." *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Article III standing "requires a concrete injury even in the context of a statutory violation." *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 341 (2016). Here, many Named Plaintiffs have suffered a concrete injury, but a sizeable number have not. At least ten Named Plaintiffs allege statutory violations but do not claim accompanying property damage, personal injury, or specific damage to the subject candle. Doc. 38, PageID 763–64. Eight other Named Plaintiffs claim damages relating only to the subject candle(s). *Id*. at PageID 764. Why then does this Court not comb through each of the eighty-seven Named Plaintiffs' claims, assess whether each has alleged a concrete injury in addition to the statutory violation, assess further whether each individual Named Plaintiff's claim is tolled by the applicable statute of limitations or is otherwise barred by the economic loss doctrine of the jurisdiction in which he or she resides, and excise those who have no cognizable claim from the rest such that the underlying class allegations may still be preserved? Not only would this "many individual inquiries" demonstrate that a class action in this context "[would] not [be] a superior form of adjudication," this action would still would not cure the next critical issue—that is to say, the alleged injuries are not fairly traceable to each Named Defendant. *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012).

*Standing (traceability).* To be traceable, an injury cannot have been "'th[e] result [of] the independent action of some *third party not before the court*.'" *Doe v. DeWine*, 910 F.3d 842, 849–50 (6th Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis added). Named Plaintiffs "must tie the injury to each [D]efendant," even in the class action context. *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 293 (6th Cir. 2023) (collecting cases). Here, Plaintiffs have not established that their injuries are fairly traceable to Candle-lite Defendants. Multiple companies manufacture Mainstays-branded candles, including some that are not parties to this suit. Doc. 49, PageID 989. Most claims allege only generally that

Named Plaintiffs "purchased a Mainstays-branded candle from Defendant's [*sic*] Walmart store," Second Am. Compl., *passim*, and that Candle-lite Defendants "manufactured, sold, and advertised Mainstays candles for sale by Defendant Walmart." *Id.* ¶ 55. But not one Named Plaintiff specifies whether the candle that caused the alleged injury was manufactured by (*i.e.*, traceable to) Candle-lite Defendants. An injury that is not traceable to Candle-lite Defendants does not give Named Plaintiffs "Article III standing to sue [them]," even if Candle-lite Defendants may have "engaged in similar conduct that injured other parties." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) (citing *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)). While there are two exceptions to the rule that each Named Plaintiff must demonstrate standing vis-à-vis each Named Defendant, Plaintiffs have not persuaded this Court that either exception applies. *See Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1204–05 (6th Cir. 1983).

*Predominance.* The negligence (Count I) and unjust enrichment (Count II) class allegations fail for a lack of predominance. To demonstrate predominance, parties must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, too many factual variations abound for common questions of fact to predominate. The alleged injuries and factual scenarios vary widely. Plaintiffs do not identify the "common defect" to substantiate their claim that all Mainstays-branded candles manufactured since 2016 are defective. There are at least six sizes of candles, two types of wicks, thirty-nine wax and chemical formulations, and multiple other manufacturers besides Candle-lite Defendants. Moreover, at least two substantial remedial actions occurred during the proposed class period, including product withdrawals, recalls, and reformulations. Under recent guidance from the

Sixth Circuit, this Court "must grapple" with a product changing over time "to answer whether the existence of a defect can be established in one stroke." *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 248 (6th Cir. 2024). But Plaintiffs do not explain, let alone mention, these remedial actions. Nor do Plaintiffs assert a common defect that would otherwise unite the common questions of fact.

Even questions of law do not predominate. Named Plaintiffs assert thirty-eight separate claims for negligence, unjust enrichment, and violations of thirty-six consumer protection and unfair competition statutes and deceptive trade practices laws from thirty-nine different jurisdictions. Second Am. Compl., ¶¶ 444–1094. Named Plaintiffs propose forty different classes (thirty-eight State Classes including the District of Columbia and a Nationwide Class) and an additional 116 sub-classes. *Id.* ¶¶ 434–43. There are material variations in the implicated jurisdictions' unjust enrichment laws and the applicability of legal defenses and doctrines. *See* Doc. 38, PageID 771–72. Plaintiffs attempt to explain away that the variations of state laws are "overstate[d]." Doc. 43, PageID 895. Plaintiffs posit the abundant availability of classes and subclasses can streamline analysis of these issues and that the Court can simply "choose not to certify [the] class" where variations are dispositive. But the vast number of classes and subclasses is not a solution to the problem. It is Plaintiffs' *confession* to the problem.

*Proposed Class Definitions.* Plaintiffs' proposed class definitions are impermissibly overbroad. A class is overbroad where it "includes members who have not suffered harm at the hands of the defendant and are not at risk to suffer such harm in the future." *Givens v. Van Devere, Inc.*, No. 1:11-CV-666, 2012 WL 4092803, at *13 (N.D. Ohio Apr. 27, 2012) (citing *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001)). Plaintiffs claim class-wide

injuries on the theory that *every* Mainstays-branded candle has "material defects" in the form of "safety risks." Second Am. Compl., ¶ 66. But the Supreme Court has vitiated the argument that an "asserted risk of future harm" is a cognizable claim in the class action context. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021). That does not appear to stop Plaintiffs. Instead, Plaintiffs seek to certify dozens of classes that would encompass "all persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries" since March 15, 2015—not only those with concrete injuries. *See* Second Am. Compl., ¶ 434. In other words, all one needs to have done in order to join in this class action is to have purchased any Mainstays-branded candle just once over the last decade. Potentially millions of unharmed people would qualify. These vast class definitions—and therefore these class allegations—are completely unworkable because there is no clear indication of who would have standing in order to be "entitled to relief." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004) (citation omitted).

*Sufficiency of allegations (Plausibility and specificity).* The remaining fraud-based individual Named Plaintiff claims against Walmart are insufficiently pleaded. A plausible claim is not merely "possible," *id.* at 557, or "conceivable." *Id*. at 570. For a claim to be plausible, it must permit a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations "must be enough to raise a right to relief above the *speculative* level." *Twombly*, 550 U.S. at 555 (emphasis added). Moreover, Rule 9(b) imposes a heightened pleading requirement for fraud-based claims, requiring them to be pleaded "with particularity." *See* Fed. R. Civ. P. 9(b). Here, Plaintiffs present generalized and speculative allegations that Defendants have been in cahoots since 2016 materially misrepresenting the safety of Mainstays-branded candles and

"actively and fraudulently conceal[ing] the known defects associated" with their products. Second Am. Compl., ¶ 456. Yet Plaintiffs fail to adequately allege that Defendants had *knowledge* of the defect. Knowledge is an essential element to maintaining the fraud-based claims that Defendants have materially misrepresented the safety of the candles or have consciously omitted critical information about the defects. After all, how can one fraudulently misrepresent or conceal a defect—the existence of which one does not know? But Plaintiffs' claims of knowledge hinge entirely upon a few undated consumer complaints and a few 2016 Facebook posts. *Id.* ¶ 424–26. From these "reports," Plaintiffs construct a theory that Defendants had exclusive knowledge of the latent defects of every Mainstays-branded candle, even those manufactured after the 2018 product reformulation, and have deliberately chosen to conceal them for almost a decade. That is neither plausible nor specific enough to withstand a motion to dismiss.

*Sufficiency of allegations (Lack of a common defect).* Courts generally require product defect and liability allegations to specify that "the defendant manufactured the product," to articulate "that the product was used by the plaintiff," to plead "that the product failed while being used by the plaintiff," and to allege "that the portion of the product that failed could be identified and is so identified in the complaint." *Barreca v. AngioDynamics, Inc.*, No. 4:15-cv-1111, 2015 WL 5085260, at *3 (N.D. Ohio Aug. 27, 2015). Despite claiming "defects" hundreds of times throughout their Second Amended Complaint, Plaintiffs do not allege a defective *type* or *model* or *portion* of Mainstays-branded candle. Rather, from the single test of one 11.5 oz. vanilla candle, Plaintiffs speculate that, regardless of the manufacturer, *every* single Mainstays-branded candle manufactured since March 4, 2016—despite the six sizes of candles, two types of wicks, or thirty-nine wax formulations—has dangerous (but undefined)

defects. This failure to identify the common defect does not give Defendants "fair notice of what ... the claim[s] [are] and the grounds upon which [they] rest[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

*Theory of Liability*. The cornerstone of Plaintiffs' claims is that Defendants affirmatively misrepresented the safety of Mainstays-branded candles and fraudulently concealed the known defects associated with them.[5] While Plaintiffs mention Defendants' negligent omissions, these occasional references appear to be mere "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 545. The gravamen of Plaintiffs' complaint and the primary issues in the parties' briefing make clear that Named Plaintiffs intend to hold Defendants to a theory of liability whereby Defendants falsely misrepresented, intentionally deceived, and fraudulently concealed the known defects of the candles. But as currently alleged, this fraud-based theory of liability does not stand up to scrutiny. The Court does not comment on whether other theories of liability may be more workable. And due to inadequate briefing, the Court declines to undertake at this juncture an exhaustive analysis of the remaining allegations through the lens of negligent omission, rather than the presently commanding one of active misrepresentation or fraudulent omission.

*Disposition*. The Court does not adjudicate upon the pending Motions on the merits or dispose of the underlying claims with prejudice. The Court recognizes that many Named Plaintiffs appear to have suffered injuries because of Mainstays-branded candles. The Court

---

[5] *See* Second Am. Compl., ¶ 60 ("Defendants sought to create, and did create, an image of the candles that would lead a reasonable consumer to believe Defendants' Mainstays candles were completely safe for use"), ¶ 62 ("Defendants already knew. . . contained representations and omissions. . . were false, deceptive and misleading), ¶ 65 ("Defendants made actionable statements that the products were free of defects and safe and fit for their ordinary intended use and purpose"), ¶ 66 ("Defendants made actionable statements that the ordinary use of the candles would not involve undisclosed safety risks").

14

understands the complexities associated with proposed class actions, especially those involving numerous jurisdictions. But the Court cannot proceed with a comprehensive analysis and a conclusive determination on the validity of the pleadings where so many deficiencies exist that would unfairly prevent certain Named Plaintiffs from asserting their claims or that may improperly deny Defendants the notice and knowledge wherewith to defend against them.

What guides this Court's decision here is the consideration that this is not the same case now as when Plaintiffs filed their Second Amended Complaint in November 2021. Much time has passed since then, and many circumstances have changed. Although the parties disagree on the extent, at least *some* additional discovery has been exchanged and new information revealed in the three-and-a-half years since the present Motions were filed in late December 2021/early January 2022. *See* Minute Entry, Nov. 21, 2024. That includes a 2018 voluntary market withdrawal of certain Mainstays-branded candles facilitated by the U.S. Consumer Product Safety Commission, and a 2023 voluntary product recall of certain Mainstays-branded candles where contacting consumers were eligible for a refund. These events contradict Plaintiffs' claims that Defendants have been "actively and fraudulently conceal[ing] the known defects associated with their candles." Second Am. Compl., *passim.* Such contentions are based on the belief that "Defendants have not recalled its [*sic*] products nor provided any remedial effectors including a warning disclosing their possible risks." *Id.* ¶ 603. But that is belied by the record before the Court.

Postponing an adjudication on the merits and giving Plaintiffs leave to amend their pleadings is, in this Court's view, the most appropriate course of action. "Justice so requires" it. *See* Fed. R. Civ. P. 15(a)(2). *See also Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579,

591 (6th Cir. 1990) ("Decisions as to when justice requires amendment are left to the sound discretion of the trial judge…."). For one, because the class allegations fail, the Court is left with dozens of individual claims with no unifying mechanism to streamline their resolution without needing to resort to numerous individual mini-trials. *See Abriq v. Metro. Gov't of Nashville/Davidson Cnty.*, No. 3:17-CV-00690, 2018 WL 10152571, at *2 (M.D. Tenn. July 26, 2018) ("Managing a case with both a class action claim and an individual claim would likely be unwieldy."). Secondly, the additional discovery exchanged by the parties would help clarify some of the contested issues, determine which injuries are traceable to which Defendants (or non-parties), and provide firmer ground on which Plaintiffs may build their theory of liability or allege a common defect or for the parties to otherwise engage in good-faith settlement negotiations.

What is more is that the underlying claims appear to have changed substantially. For example, in their response to Defendants' Motions to Dismiss, Plaintiffs previously asserted that they do not intend to bring "claims for damages that rose before March 4, 2016." Doc. 43, PageID 885. Plaintiffs state that "March 2016" is the time-period by which "Plaintiffs believe the statute of limitations should begin tolling." *Id*. at PageID 887. But in their 2024 Motion for Class Certification, Plaintiffs define the class to include all purchasers of Mainstays-branded candles "on or after March 15, *2015*." Doc. 68, PageID 1189 (emphasis added). In their Second Amended Complaint, Plaintiffs brought thirty-eight separate claims for negligence, unjust enrichment, and violations of thirty-six consumer protection statutes from nearly forty jurisdictions, (Second Am. Compl., ¶¶ 444–1094), and proposed thirty-nine different classes and an additional one hundred sixteen sub-classes. *Id*. ¶¶ 434–43. But in their

16

2024 Motion for Class Certification, Plaintiffs propose only *one* nationwide class and only *three* subclasses under a claim for negligence. *See generally* Doc. 68.

The deficiencies in the pleadings, changes in the case and nature of the claims, and considerations of limited judicial resources lead this Court to its ultimate disposition. Importantly, this decision applies only to the specific facts of the instant case, and the Court *expressly* refrains from announcing a general rule for the disposition of future proposed class actions.

## III.   CLASS ALLEGATIONS

Named Plaintiffs bring two nationwide class action allegations: negligence (Count I) and unjust enrichment (Count II). Second Am. Compl., ¶¶ 444–68. Under both claims, eighty-seven Named Plaintiffs seek to represent (1) a proposed Nationwide Class defined to include all "persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015 OR who suffered property damage and/or personal injury caused by Mainstays candles purchased from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015 …"; (2) three subclasses within the proposed Nationwide Class composed of persons with varying degrees of personal or property injuries and reasons for purchasing the candle(s); (3) thirty-eight State Classes for the respective Named Plaintiffs bringing state consumer protection, unfair competition, and deceptive trade practice laws (Counts III–XXXVIII), which would be comprised of (4) one-hundred-and-sixteen subclasses within the State

Classes.[6] *Id.* ¶¶ 434–35. Defendants maintain these claims are not suitable for class treatment because common questions of law and fact do not predominate under Fed. R. Civ. P. 23(b)(3). Doc. 38, PageID 757; Doc. 39, PageID 808.

## A. Standard of Review

A federal court may decide only actual cases or controversies asserted by plaintiffs who have standing. U.S. Const. art. III, § 2. Although Defendants bring the Motions under Fed. R. Civ. P. 12(b)(6),[7] to the extent the Motions are based on Named Plaintiffs' purported lack of standing, the Motions are "more appropriately considered as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *See Timoneri v. Speedway, LLC*, 186 F. Supp. 3d 756, 759 (N.D. Ohio 2016) (construing a 12(b)(6) motion to dismiss as a 12(b)(1) motion); *see also Kallai v. Jatola Homes, LLC*, No. 5:21-cv-56, 2021 WL 5961626, at *3, n.1 (N.D. Ohio Dec. 16, 2021) ("[T]his [c]ourt will analyze [Rule 12(b)(6)] arguments under the standard of review of a Federal Rule of Civil Procedure 12(b)(1) motion because standing is a subject matter jurisdiction issue rather than a sufficiency of the pleading issue."). If the Court determines that "it lacks subject-matter jurisdiction," it must "dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[6] In their October 2, 2024 Motion for Class Certification (Doc. 68), Plaintiffs moved to certify (1) a proposed Nationwide class of all "persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015, and who meet the definition of one or more of the following Subclasses"; and (2) three subclasses of "[p]ersons or other entities" in the Nationwide Class who purchased Mainstays-branded candles in three different categories of states. Doc. 68, PageID 1189–90.

[7] Defendants move to dismiss Plaintiffs' claims "pursuant to Fed. R. Civ. P. 12(b)(6), and, alternatively, under [Fed. R. Civ. P.] 23(d)(1)(D)." Doc. 38, PageID 762–63.

### i.   Rule 12(b)(1)

"[C]hallenges to standing are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject-matter jurisdiction." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023). When a defendant challenges jurisdiction under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) ("[T]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met."). Further, a dismissal under Rule 12(b)(1) is without prejudice because it "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Id.* As is relevant here, a "*facial* attack … merely questions the sufficiency of the pleading."[8] *Id.* The Court accepts the facts of the complaint as true when assessing plausibility and standing under a facial challenge. *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *2 (S.D. Ohio May 8, 2024) (citing *Iqbal*, 556 U.S. at 678). But "that does not mean the Court must take everything Plaintiffs allege at face value, no matter how unsupported." *Barnett*, 2024 WL 2078209, at *2. Rather, the standard for whether a

---

[8] A factual attack under Rule 12(b)(1) occurs where the parties dispute the truthfulness of the factual allegations themselves, thus requiring the district court to "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Here, Defendants do not appear to dispute whether the alleged injuries occurred. Rather, Defendants argue that the injuries as alleged are not viable pleadings that enfranchise this Court with jurisdiction in order to entertain them.

"complaint [] allege[s] jurisdiction adequately" is whether it "contain[s] *non-conclusory* facts which, if true, establish that the district court ha[s] jurisdiction over the dispute." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (emphasis added).

      ii.    **Rule 23**

Rule 23 of the Federal Rules of Civil Procedure outlines the elements which are necessary to maintain a class action in federal court. "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to these four requirements, class action plaintiffs must also satisfy one of Rule 23(b)'s subsections. At issue here is subsection (b)(3), which requires a court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A plaintiff's failure to satisfy Rule 23(a) and (b)'s requirements "dooms the class." *Pilgrim*, 660 F.3d at 946.

Most often, a defendant's arguments against class certification are raised in opposition to a plaintiff's motion for class certification. *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14-cv-15, 2015 WL 10906068, at *2 (S.D. Ohio Mar. 31, 2015). Here, the Court is adjudicating upon motions to dismiss. But Rule 23 allows courts to determine "[a]t an early practicable

time ... whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "[N]othing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim*, 660 F.3d at 949. Thus, even at the pleadings stage, a court may dismiss class action claims if it is apparent that the class action claim is deficient as a matter of law.[9] *Id.* Though it should exercise caution in doing so, a court may *sua sponte* strike class action allegations where (1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim. *Id.*; *see also Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014).

### B. Law and Analysis

Defendants move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12, and in the alternative, Fed. R. Civ. P. 23. *See* Doc. 52, PageID 1032; Doc. 38, PageID 754. Defendants argue the Second Amended Class Action Complaint must be dismissed because too many factual variations abound, and the laws "vary significantly" such that this action "fails to meet Fed. R. Civ. P. 23(b)(3)'s predominance requirement." Doc. 39, PageID 811.

### i. Class Standing

Article III § 2 of the Constitution limits a federal court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. Thus, "[c]onsideration of the standing issue" may occur "prior to class certification." *Smith v. Laws. Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009). The threshold question before this Court is whether Named Plaintiffs have standing. *See Ward v. Alt. Health Delivery Sys.,* 261 F.3d 624, 626 (6th

---

[9] Rule 23(d)(1)(D) also provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction").

To demonstrate standing, a plaintiff must show: "(1) that she suffered a concrete, particularized, and actual or imminent injury; (2) that the injury is traceable to the defendant's conduct; and (3) that a favorable ruling would redress that injury." *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *3 (S.D. Ohio May 8, 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). An injury is "concrete" and cognizable under Article III where it bears a "close relationship" to a harm traditionally recognized at common law. *Id.* at 425. An injury is fairly traceable where it does not result "from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 41–42 (1976). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" has been met. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Article III standing requirements apply to class actions as well. *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005); *see also Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints[.]"). In this Circuit, a plaintiff "'cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury.'" *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.,* 709 F.2d 1200, 1204 (6th Cir. 1983) (quoting *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 462 (9th Cir. 1973)). This is true "even though the plaintiff may have suffered an injury identical to that of the other parties he is representing." *Thompson*, 709 F.2d at 1204.

Thus, for a proposed class action to proceed, "each named plaintiff must demonstrate that he satisfies the requirements of standing vis-à-vis each [d]efendant." *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("A potential class representative must demonstrate individual standing vis-à-vis the defendant…."); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) ("[P]laintiffs needed to allege how the requested relief against *each* of the defendants could redress plaintiffs' alleged injuries-in-fact."); *Williams v. FirstPlus Home Loan Tr. 1996-2*, 209 F.R.D. 404, 414 (W.D. Tenn. 2002) ("In a class action (or potential class action), the individual standing of each named plaintiff vis-à-vis each defendant is a threshold issue.").

Nonetheless, there are two exceptions to the rule that each named plaintiff must have a cause of action against each named defendant:

> (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and
> (2) Instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*Thompson*, 709 F.2d at 1204–05 (citing *La Mar*, 489 F.2d at 462) (cleaned up).

Although class members do not have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing. *Amchem Prods.*, 521 U.S. at 612–13; *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1055 (N.D. Ohio 2022) ("Because 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not,' each class member must have standing.") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). As is relevant here, "[w]here an allegedly defective product results in harm to every potential class member that has already

23

manifested, the class has standing. But where … the remaining allegations show a risk of harm in the future, [p]laintiffs will not be able to carry their burden under Rule 23 … making striking the class allegations an appropriate procedural response." *Jones*, 583 F. Supp. 3d at 1057.

To allow claims to proceed, the Court must be satisfied that *each* Named Plaintiff has suffered a redressable injury-in-fact that is traceable to *each* Named Defendant. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Here, many Named Plaintiffs have not adequately pleaded an injury-in-fact. Of the remaining who have, their injuries appear to be fairly traceable *only* to Defendant Walmart. Not *one* Named Plaintiff has adequately traced their injury to *each* Named Defendant. Thus, striking the class allegations—as currently pleaded—is the "appropriate procedural response." *Jones*, 583 F. Supp. 3d at 1057. Moreover, because many Named Plaintiffs have not adequately alleged a cognizable injury-in-fact and lack standing, the proposed classes fail. Because all Named Plaintiffs have not alleged an injury-in-fact that is fairly traceable to Candle-lite Defendants, the Court **GRANTS** Candle-lite Defendants' Motion to Dismiss **WITHOUT PREJUDICE**. Doc. 38.

### a. Multiple Named Plaintiffs have not adequately pleaded a cognizable injury-in-fact.

A plaintiff must demonstrate an injury-in-fact: "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because many members of the proposed classes lack Article III standing,[10] the proposed "class[es] cannot be certified."

---

[10] The Court considered whether Named Plaintiffs may have alleged injury through an overpayment theory of harm. The Sixth Circuit provides that a "plaintiff who pays a premium for a product but does not receive the anticipated benefit demonstrates a cognizable injury in fact sufficient to establish Article III standing." *Raymo*

*Boykin v. Procter & Gamble Co.*, No. 1:23-cv-427, 2025 WL 962806, at *3 (S.D. Ohio Mar. 31, 2025).

As noted, multiple Named Plaintiffs in this lawsuit have not adequately alleged a concrete injury-in-fact. Missouri Plaintiff Kim Schooley alleged that her candles occasionally popped when lit, "causing a potential fire hazard." Second Am. Compl., ¶ 265. Plaintiff Schooley also averred that her candles "had very high flames unless cut the wick every time of burning"—a fire-prevention tactic specifically included in the candle's label and instructions. *Id*. Illinois Plaintiff Brian Slafter asserted that his candle "burned extremely hot with high flames leaving soot on the side of the candle." *Id*. ¶ 188. New York Plaintiff Timothy Sherer avers that he "lit the Mainstays candle and noticed the candle had a dangerously high flame." *Id*. ¶ 289. New York Plaintiff Nancy Stockwell "noticed the flame burned at a dangerous height, much larger than normal." *Id*. ¶ 293. New Hampshire Plaintiff Chris Chesley "noticed accelerated excessive burning from the Mainstays candles that lasted half the time as Yankee Candle branded candles." *Id*. ¶ 273. Maine Plaintiff Karla Flanders "lit the Mainstays candle and after it burned for about an hour, the flame shot up quickly and *nearly* caught her curtain on fire." *Id*. ¶ 224 (emphasis added). Arkansas Plaintiff Nicole Sutton "lit the Mainstays candles, which burned really high and popped before she threw [the candles] away." *Id*. ¶ 107. Illinois Plaintiff Valerie Taylor's Mainstays-branded candles

---

*v. FCA US LLC*, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020) (citing *Wuliger v. Mfrs. Life. Ins. Co.*, 567 F.3d 787, 794 (6th Cir. 2009)). This concept, slightly narrower than the "benefit-of-the-bargain" theory, reflects consumers' "overpayment of a price premium based on allegedly inflated … representations." *Bechtel v. Fitness Equip. Servs. LLC*, 339 F.R.D. 462, 484–85 (S.D. Ohio 2021); *see also Loreto v. Proctor & Gamble Co.*, 515 F. App'x 576, 577–78, 581 (6th Cir. 2013) (holding that plaintiffs suffered an injury in fact because they paid a price premium for a product relying on a misrepresentation). But no Named Plaintiff here alleges that he or she paid a "premium" price for the Mainstays-branded candles. Thus, Named Plaintiffs may not invoke this theory of harm to establish class-wide standing.

"produced excessive smoke coming from the wick and the candles themselves." *Id.* ¶ 180. Wyoming Plaintiff Christiana Strauss "lit the Mainstays candle and experienced high flames and the candle began sparking, *nearly* burning her." *Id.* ¶ 421 (emphasis added). South Carolina Plaintiff Audrey Jones alleged that "after lighting each one of the Mainstays candles, the candles burned, sparked, and popped, with flames going high and low until she blew them out." *Id.* ¶ 337.

These are the total extent of these Plaintiffs' "injuries." While asserting an underlying statutory violation, these Plaintiffs have failed to demonstrate an accompanying "concrete and particularized" injury. *Lujan*, 504 U.S. at 560. At best, their professed harms are "conjectural [and] hypothetical." *Id.* Plaintiffs counter that "it is easy … here to establish Article III standing because there is no dispute that [Plaintiffs] have brought a typical lawsuit against Defendants raising regular, common-law claims for Defendants' actions toward the class." Doc. 43, PageID 937–38. But Plaintiffs do not explain how any of the above-Named Plaintiffs' professed injuries bears a "close relationship" to a harm traditionally recognized at common law. *TransUnion LLC*, 594 U.S. at 425. As such, these pleadings do not amount to a cognizable injury-in-fact. These ten Named Plaintiffs are **DISMISSED** from this action **WITH PREJUDICE**.

### b. Sufficiently pleaded injuries are not fairly traceable to Candle-lite Defendants.

The remaining Named Plaintiffs indeed may have suffered an injury-in-fact (although some of their claims may be barred by the economic loss doctrine or by the applicable statute of limitations). But the Court has serious doubts as to whether each Named Plaintiff's alleged injuries is fairly traceable to each Named Defendant. The second element of Article III standing requires a plaintiff's injury to be "'fairly traceable to the defendant's allegedly

26

unlawful conduct.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). No different from any other lawsuit, in the class action context, "each named plaintiff must demonstrate that he satisfies the requirements of standing vis-à-vis each defendant." *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (stating that the individual standing of each plaintiff with respect to each defendant is a threshold issue). Fair traceability does not require the defendant to have necessarily "caused" the plaintiff's injury. Rather, the inquiry is whether the plaintiff has adequately alleged an "injury that fairly can be traced to the challenged action of the defendant[s]," whereby the injury did not result "from the *independent action of some third party not before the court.*" *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 41–42 (1976) (emphasis added).

Here, Named Plaintiffs have not demonstrated that their injuries are "fairly traceable" to each Named Defendant. *Lujan*, 504 U.S. at 560. Candle-lite Defendants are not the sole manufacturers of Mainstays-branded candles.[11] Doc. 38, PageID 762; Doc. 49, PageID 989. The arrangement among the manufacturers is that some vendors will exclusively produce, or otherwise not produce, a particular size or fragrance of candle. Doc. 49, PageID 989. Thus, other vendors—the "third part[ies] not before the [C]ourt," *Simon*, 426 U.S. at 42—likely manufactured many of the candles that caused some Named Plaintiffs' injuries. *See* Doc. 49,

---

[11] Plaintiffs claimed at the February 26, 2025 hearing they were not aware of other manufacturers of Mainstays-branded candles. However, in their March 23, 2022 Reply, Candle-lite Defendants specifically rejected Plaintiffs' claim "that Candle-lite is the exclusive manufacturer of all Mainstays candles" and maintained that "Candle-lite could not have concealed any conduct as to candles which it did not manufacture." Doc. 49, PageID 989.

PageID 989 ("Candle-lite could not have concealed any conduct as to candles which it did not manufacture.").

Not one Named Plaintiff specifies that the Mainstays-branded candle he or she purchased was specifically manufactured by Candle-lite Defendants. At bottom, Plaintiffs assert dozens of class allegations under numerous jurisdictions for manufacturing and design defects. *See generally* Second Am. Compl. But Plaintiffs fail to *plead* the required elements of their claims. Generally, "[m]anufacturing and design defect claims require allegations that *the defendant manufactured the product*; that the product was used by the plaintiff; that the product failed while being used by the plaintiff; and, that the portion of the product that failed could be identified and is so identified in the complaint." *Oblak v. Integra Lifesciences Corp.*, No. 16-cv-1832, 2017 WL 1831098, at *2 (N.D. Ohio May 4, 2017) (collecting cases) (emphasis added). All Plaintiffs plead is that Candle-lite Defendants "manufactured, sold, and advertised Mainstays candles for sale by Defendant Walmart" during "some or all of the time period from 2015 to the present." Second Am. Compl., ¶ 55. This is not enough to establish whether each Named Plaintiff's injury is "fairly traceable" to Candle-lite Defendants.[12] *Lujan*, 504 U.S. at 560.

---

[12] While an analysis into causation may be premature at the motion to dismiss stage, the Court notes that at least some Named Plaintiffs allege injuries unrelated to or too attenuated from the defective portion of the subject candle. *See id.* ¶¶ 399–402. For example, Virginia Plaintiff Michael Giglione claims that his Mainstays candle "emitted sparks and caused a fire that burned down his townhouse … and caused residual smoke and roof damage to his neighbor's connected townhomes." *Id.* ¶ 401. Though the fire was, upon "information and belief," reported to have originated from a Mainstays-branded candle, Plaintiff Giglione does not assert that the candle's alleged *defect* caused the fire—only that the candle's *sparks* caused the fire. *Id.* But candles are incendiary materials with inherent dangers that could cause other objects nearby to become enflamed. This innate danger gives credence to the well-known pearl of wisdom to "never leave a candle unattended." Plaintiff Giglione's pleading does not give rise to a reasonable inference that a nexus exists between the candle defects and the damages for which he now seeks relief. Similarly, Plaintiff North Carolina Rebecca Meador alleges that the flame of her Mainstays candle "grew dangerously high" such that she had to use a fire extinguisher. *Id.* ¶ 305. But she seeks relief for damages to her property incurred in part because "powder from the extinguisher got everywhere, ruining nearby belongings, including her television." *Id.*

Nevertheless, there are two exceptions to the rule mandating that each named plaintiff must maintain standing vis-à-vis each named defendant. Class action plaintiffs need not establish traceability to each defendant "when the facts of the case support [the proposition that] the injury was a result of a 'conspiracy or concerted schemes between the defendants.'" *Moore v. Auto Club Servs.*, 615 F. Supp. 3d 670, 682 (E.D. Mich. 2022) (quoting *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.,* 709 F.2d 1200, 1204–05 (6th Cir. 1983)). Likewise, a carve-out exception exists for instances "in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Moore*, 615 F. Supp. 3d at 680. Plaintiffs make no argument that either exception would apply, so the Court "will assess their applicability to the present action on its own." *Accord v. Anderson Cnty., Tenn.*, No. 3:21-cv-00077, 2021 WL 6135691, at *4 (M.D. Tenn. Dec. 28, 2021).

The Court finds that neither exception is applicable here. Named Plaintiffs have failed to allege standing vis-à-vis Candle-lite Defendants. Therefore, the Court **GRANTS** Candle-lite Defendants' Motion to Dismiss. Doc. 38. The dismissal is **WITHOUT PREJUDICE**, and Plaintiffs are granted leave to amend their Complaint so as to cure these deficiencies.

### 1. Exception One: Conspiracy or Concerted Scheme

In Counts II through XXXVIII, Plaintiffs generally assert that Defendants engaged in a "scheme" whereby they "actively and fraudulently concealed the known defects associated with their candles by continuing to market the candles as safe, even after receiving numerous complaints about their dangerous nature."[13] Second Am. Compl., *passim*. If these elements

---

[13] As part of their negligence class claim (Count I), Plaintiffs also allege a fraudulent concealment scheme orchestrated by Defendants. Second Am. Compl., ¶¶ 444–57. But negligence and fraud are two separate legal concepts with differing mental states of culpability. *See, e.g.*, *Associated Mut. Hosp. Serv. of Michigan v. Health Care Serv. Corp. of Illinois*, 71 F. Supp. 2d 750, 752 (W.D. Mich. 1999); *Heide v. Ethicon*, Inc., No. 4:20-cv-160,

are pleaded with specificity and are also accompanied by factual support or reasonable inference, then Named Plaintiffs' failure to demonstrate fair traceability may be excepted. *Thompson*, 709 F.2d at 1204–05.

But this is exactly where Plaintiffs' allegations are lacking. Plaintiffs advance a barebones theory of liability that Defendants connived to deceive consumers by affirmatively misrepresenting the safety of the candles and by fraudulently concealing the known defects associated with them for nearly a decade.[14] But the asserted "scheme" is not adequately pleaded with specificity. Instead, the Second Amended Complaint contains averments related to traceability that can only be characterized as conclusory. Neither is the product defect identified, nor the purported fraudulence buoyed by factual support. This Court is therefore unable to draw the reasonable inference that Defendants had *knowledge* of the defect in order to find that Defendants engaged in a "conspiracy or concerted scheme[]" to conceal or to make material misrepresentations about it. *Id.* at 1204. Defendants' alleged scheme is

---

2020 WL 1322835 (N.D. Ohio Mar. 20, 2020). The Court cannot identify caselaw where a group of defendants were found to be *negligent* in perpetrating a *fraudulent* "conspiracy or concerted scheme[]." *Thompson*, 709 F.2d at 1204. Thus, the negligence class claim (Count I) would not trigger this exception to the standing requirement.

[14] While Plaintiffs sporadically mention that Defendants' "omissions" deceived consumers, there is inadequate briefing as to the sufficiency of these claims. The Court "will not do counsel's job" in clarifying whether they intend to pursue claims of fraudulent misrepresentations or negligent omissions. *Cofffland v. Colvin*, No. 13-1030-JWL, 2014 WL 1571797, at *4 (D. Kan. Apr. 17, 2014). Instead, the Court uses Plaintiffs' own characterizations of the case as the benchmark for its analysis on Plaintiffs' theory of liability.

> In this case, Defendants are alleged to have made intentional, false misrepresentations with regard to their products. In particular, Defendants are alleged to have "repeatedly advertised, both on the Mainstays candles' labels and on websites, among other items, that the products were safe for ordinary use" …, that Defendants knew of "materials facts concerning the defective nature of the Mainstays candles, including that they had the propensity to cause, and had caused injuries and damages" …, that Defendants' "unfair and deceptive practices and acts…were immoral, unethical, oppressive, and unscrupulous" …, and that Defendants "acted intentionally, knowingly, and maliciously" ….

Doc. 43, PageID 946. These averments characterize Plaintiffs' theory of liability as based on Defendants' allegedly fraudulent and affirmative misrepresentations, not on their negligent acts or omissions.

proclaimed across the entirety of the Second Amended Complaint but appears to be more bandied about by Plaintiffs than it is corroborated by facts or reasonable inferences. Because the fraud-based scheme is not adequately pleaded, Named Plaintiffs' class allegations against Candle-Lite Defendants fail on the basis of standing.

<u>*Pleading requirement for fraud-based claims.*</u>

Rule 9(b) imposes a heightened pleading requirement for fraud-based claims. Sixth Circuit precedent demands that claims for affirmative misrepresentations: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). For claims involving fraudulent omissions, the pleading standard is slightly lower but still heightened. Rule 9(b) requires that parties "must specify the who, what, when, where, and how" of the alleged fraud-based omission or conduct. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (internal quotations omitted). Specifically, a plaintiff must allege "(1) precisely what was omitted; (2) who should have made the representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* "Knowledge" of the defect is required "to show 'what' was allegedly omitted." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 277 (E.D. Mich. 2021). A "pleading [for fraudulent omission] will 'suffice under the [Rule 9(b)] standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect.'" *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 682 (E.D. Mich. 2020) (quoting *Wozniak v.*

*Ford Motor Co., No.* 17-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (citing *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017))).

Furthermore, the adequacy of Rule 9(b) pleadings must likewise be analyzed under the *Twombly/Iqbal* framework. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021). This requires a plaintiff to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, by "pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For fraudulent concealment,[15] a complaint "*must* contain specific *facts* showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed." *Smith*, 998 F.3d at 886 (emphasis added). Mere assertions that a manufacturer's routine testing of a product, along with customer feedback or complaints, "should have alerted it to a dangerous defect are not enough to meet the 12(b)(6) pleading standard." *Id*.

But this is all that Plaintiffs have done. Plaintiffs assert in a conclusory fashion that Defendants engaged in fraudulent conduct "as part of a plan or scheme." Second Am. Compl., ¶ 1081. No reasonable inference supports this, and Plaintiffs have failed to satisfy the elements of their respective fraud-based claims. Thus, Plaintiffs cannot avail themselves of *Thompson*'s first exception to class standing. *Thompson*, 709 F.2d at 1204-05.

---

[15] Plaintiffs "do not plead a separate cause of action for fraudulent concealment." Doc. 43, PageID 959. Plaintiffs maintain that their allegations of fraudulent concealment are "merely a procedural device used to toll the statute of limitations for the purpose of pleading conduct that may otherwise have occurred outside the relevant statutes of limitation." *Id*. While recognizing that fraudulent concealment is not pleaded as a separate count here, the Court will construe Plaintiffs' allegations of fraudulent concealment as an allegation that Defendants engaged in a "conspiracy or concerted scheme[]" for purposes of determining whether Article III standing exists.

*Fraud- and scheme-based claims do not satisfy Rule 9(b)'s pleading requirement.*

Plaintiffs' allegations of a fraudulent concealment or active misrepresentation scheme do not satisfy "the particularity pleading requirements of [Fed. R. Civ. P.] 9(b)." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). The Rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–162 (6th Cir. 1993)). This also means that a plaintiff must set forth specific "factual allegations supporting the assertion that [the defendant] knew about the safety implications of the [product] defect." *Smith*, 988 F.3d at 884; *see also Blurton v. Haier US Appliance Sols., Inc.*, No. 3:24-cv-225-GNS, 2025 WL 938631, at *4 (W.D. Ky. Mar. 27, 2025) ("Pre-sale knowledge is an essential element in all of [p]laintiffs' fraud-based claims.")

That is not alleged here. Named Plaintiffs' arguments of fraudulent concealment and affirmative misrepresentations are at threadbare allegations that are pleaded in formulaic recitations *dozens* of times throughout the Second Amended Complaint. The crux of Plaintiffs' claims is that Defendants "fraudulently concealed the known defects associated with their candles by continuing to market the candles as safe even after receiving numerous complaints about their dangerous nature." Second Am. Compl., *passim*. Plaintiffs aver that "Defendants had exclusive knowledge of material facts concerning the defective nature of the Mainstays candles, including that they had the propensity to cause … injuries and damages." *Id. passim*. And Plaintiffs contend that Defendants obtained benefit "under false pretenses" because of

their "concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the products." *Id.* ¶ 462.

But these conclusory claims of a candle-defect-concealing cabal fail because Named Plaintiffs have not (1) adequately asserted knowledge by Defendants of the candles' alleged defects, nor have they (2) plausibly alleged how Defendants concealed, misrepresented, or misled the consumer regarding the defects for over a decade. *See, e.g., Moore v. Auto Club Servs.*, 615 F. Supp. 3d 670, 686 (E.D. Mich. 2022) (holding that a pleading of a "general 'scheme'" where defendants were aware of falsities and misrepresentations and knowingly concealed that information did not meet Rule 9(b)'s requirements that plaintiffs "allege a specific time when, or place where, [d]efendants [engaged in] fraudulent[] conceal[ment]"); *Smith*, 988 F.3d at 886 ("To support such a claim [of concealment], a complaint must contain specific facts showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed."); *Yuhasz*, 341 F.3d at 564 ("The failure to identify specific … fraudulent acts requires dismissal.").

As to Defendant Walmart, Plaintiffs have not adequately pleaded knowledge. *See Smith*, 988 F.3d at 884. Plaintiffs' factual basis for Defendant Walmart's purported knowledge of the candle defects is a citation to a few posts on Walmart's Facebook page in 2016 and other undated consumer complaints. Second Am. Compl., ¶¶ 424, 426. But consumer complaints or reports, by themselves, are insufficient to impute knowledge of a product's defects to a defendant and are irrelevant where the complained-of products themselves have changed. *Cf. Smith*, 988 F.3d at 885 ("[A]llegations of complaints, made both online and directly to [the defendant], did not show [the defendant's] knowledge of a defect in its [products]."); *Roe v. Ford Motor Co.*, No. 2:18-cv-12528, 2019 WL 3564589, at *7 (E.D. Mich.

34

Aug. 6, 2019) (holding that plaintiffs' allegations "of consumer complaints and vehicle repairs d[id] not make it reasonable to infer [defendant's] knowledge" because a small number of complaints were "a blip on [defendant's] complaints-and-repairs radar" considering the millions of defendant's cars in use); *Elliott v. Gen. Motors LLC*, 605 F. Supp. 3d 937, 944–45 (E.D. Mich. 2022) (dismissing fraud-based claims where plaintiffs premised knowledge, in part, on "early consumer complaints to [defendant] and its dealers" and "testing conducted in response to those complaints"); *Hall v. Gen. Motors, LLC*, No. 19-cv-10186, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) (rejecting plaintiffs' allegations of pre-sale knowledge of a product's defect based, in part, on "early consumer complaints made exclusively to [d]efendant's network of dealers and directly to [d]efendant"); *Alban v. BMW of N. Am.*, No. 09–5398, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011) ("[A]s a practical matter, the Court is hesitant to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect. Such advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products. Accepting these advisories as a basis for consumer fraud claims *may discourage manufacturers from responding to their customers* in the first place.") (emphasis added); *with Weidman v. Ford Motor Co.*, No. 18-cv-12719, 2019 WL 3003693, at *6 (E.D. Mich. July 10, 2019) (finding pre-sale knowledge adequately alleged based on "pre-release evaluation and testing; repair data, replacement part sales data; early consumer complaints made directly to [defendant] … testing done in response to those complaints, aggregate data from [defendant's] dealers; and other internal sources"); *Persad v. Ford Motor Co.*, No. 17-12599, 2018 WL 3428690, at *3 (E.D. Mich. July 16, 2018) (finding pre-sale knowledge adequately alleged based on "repair order and parts data received from the dealers ... and

testing performed in response to consumer complaints"); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d 746, 763 (E.D. Mich. 2023) (finding pre-sale knowledge adequately alleged where plaintiff pleaded, in additional to consumer complaints, that the defendant "admitted" the "existence of the [product] defect … in an October 2022 recall letter"). Thus, Plaintiffs' exclusive reliance on a few undated consumer complaints and 2016 Facebook posts do not adequately impute to Defendant Walmart the knowledge that *every* Mainstays-branded candle manufactured since 2016 has inherently dangerous defects.

As to Candle-lite Defendants, Plaintiffs infer *only* on "information and belief" that Candle-lite Defendants knew of the consumer complaints regarding the candles' defects. Second Am. Compl., ¶ 427. Although claims premised on "information and belief" may survive a motion to dismiss, plaintiffs still "must set forth a factual basis for such belief" and cannot "base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). But Plaintiffs have not set forth a "factual basis" for their belief that Candle-lite Defendants knew of the consumer complaints. Plaintiffs have only sought to assign knowledge to Candle-lite Defendants through mere speculation. Thus, without more than "information and belief," Plaintiffs' fraud- and scheme-based claims against Candle-lite Defendants do not survive. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007).

### Fraud- and scheme-based claims do not withstand Twombly/Iqbal *analysis.*

Named Plaintiffs have not plausibly pleaded a fraudulent, deceptive, or misleading scheme. A plaintiff must "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, by "plead[ing] factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts considering fraud-based claims have found it insufficient for plaintiffs to conclusorily allege "only that the manufacturer knew of a defect in the [product] it sold them and failed to disclose that defect to plaintiffs before they purchased the [product]." *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 707 (E.D. Mich. 2020). But that is all that Plaintiffs charge. *See* Second Am. Compl., ¶ 459.

In fairness to Plaintiffs, this Court has held that a manufacturer or distributor's fraudulent representations about the safety of a product can constitute a plausible claim and a "concrete and particularized class-wide economic injury." *Boykin v. Procter & Gamble Co.*, No. 1:23-cv-427, 2025 WL 962806, at *4 (S.D. Ohio Mar. 31, 2025) (citing *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *3–4 (S.D. Ohio May 8, 2024) ("[A] seller's misrepresentations [can] give rise to cognizable economic injuries" where "the plaintiff would not have purchased the product but for the misrepresentation")); *see also Droesser v. Ford Motor Co.*, No. 19-cv-12365, 2023 WL 2746792, at *7 (E.D. Mich. Mar. 31, 2023) ("[A] consumer who alleges she would not have purchased a vehicle (or would have paid less for it) had the manufacturer not misrepresented the vehicle to customers' detriment or omitted mention of its significant limitations, has alleged a plausible injury-in-fact."). Indeed, each Named Plaintiff states that "[Plaintiff name] would not have bought the candle had there been a warning of the candle's true danger or had Defendants otherwise communicated the dangers associated with the candles." Second Am. Compl., *passim*. In such cases, courts recognize

that being "fraudulently induced [to] purchase" a product suffices for purposes of standing.[16] *Barnett*, 2024 WL 2078209, at *4. But Plaintiffs have not adequately pleaded Defendants' knowledge of the defect in order for this Court to find that Defendants fraudulently concealed, consciously omitted, or affirmatively misrepresented the dangerous nature of the products.

Ultimately, to take Named Plaintiffs' fraud- and scheme-based allegations as true would require this Court to make an "[un]reasonable inference[]." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016). To be sure, the 2018 voluntary market withdrawal and 2023 product recall of Mainstays-branded candles—both of which occurred during the proposed time period for all class allegations—render Plaintiffs' arguments of Defendants' fraudulent concealment lasting nearly a decade mere "labels and conclusions." *Twombly*, 550 U.S. at 555. The 2018 voluntary market withdrawal involved the reformulation and removal of Mainstays-branded candles from Walmart's shelves. The U.S. Consumer Product Safety Commission later issued Defendants a "no further action letter" in July 2018, allowing Defendants to resume manufacture and sales of Mainstays-branded candles. The 2023 product recall, issued by a non-defendant manufacturer of Mainstays-branded candles, also warned customers that "the candle wicks can burn too close to the side of the container, causing the glass to break, posing fire and laceration hazards."[17]

---

[16] At common law, "a plaintiff could maintain an action for fraudulent inducement where the defendant was 'induced to make a contract of purchase by the fraudulent misrepresentations of his vendor.'" *Barnett v. Kroger Co.*, No. 1:22-cv-544, 2024 WL 2078209, at *3 (S.D. Ohio May 8, 2024) (citing *Wilson v. New U.S. Cattle-Ranch Co.*, 73 F. 994, 997 (8th Cir. 1896)).

[17] *See* Consumer Prod. Safety Comm'n, *More than 1.2 Million Mainstays Three-Wick Candles Recalled by Star Soap Star Candle Prayer Candle Due to Fire and Laceration Hazards; Sold Exclusively at Walmart*, https://www.cpsc.gov/Recalls/2023/More-than-1-2-Million-Mainstays-Three-Wick-Candles-Recalled-by-Star-Soap-Star-Candle-Prayer-Candle-Due-to-Fire-and-Laceration-Hazards-Sold-Exclusively-at-Walmart (last visited July 30, 2025).

The Court is hard-pressed to conclude that the 2018 market withdrawal and product reformulation and the 2023 product recall evince the fact that Defendants are or were "fraudulently conceal[ing] the known defects associated with their candles." Second Am. Compl., *passim*. Plaintiffs' response to these remedial actions is to simply deny that they occurred. Plaintiffs still maintain that "Defendants have failed to disclose the existence of this defect to Plaintiffs and other customers and purchasers [and] have failed to recall the defective candles." Second Am. Compl., ¶ 432. Plaintiffs speculate that Defendants have "[f]ail[ed] to take any remedial or corrective action in response to reports of Mainstays candles functioning unsafely." *Id*. ¶ 449(e). But these positions are belied by the record, and Plaintiffs' failure to reckon in good faith with actual evidence of Defendants' remedial actions affect the plausibility of their sweeping claims. As such, Plaintiffs have not sufficiently pleaded facts to support a finding that Defendants engaged in a "conspiracy or concerted scheme[]" for purposes of Article III standing. *Thompson*, 709 F.2d at 1204–05.

## 2. Exception Two: Juridically Related

The second exception to requiring each named plaintiff to demonstrate standing vis-à-vis each named defendant concerns matters that are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Thompson,* 709 F.2d at 1204*.* The cases that fall within this exception are those that have "either a contractual obligation among all defendants or a state or local statute which requires common action by defendants." *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 909 (W.D. Tenn. 2002); *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 77 (S.D.N.Y. 1986) (the juridical link doctrine "carve[s] out an exception for defendant classes whose conduct is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual

underpinnings of the claims and to insure the assertion of defenses common to the class."); *see also United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 689 (D.D.C.1977) (finding a juridical link exists where "each member of the defendant class provides an identical service, requires employees who possess identical skills, and utilizes identical job classifications ... [and] is a party to the [] agreement or its area supplements"). The record before the Court indicates that neither of these situations exists. And the Court sees no compelling reason to carve out a new exception to long-established requirements of standing.

Moreover, the Sixth Circuit found the juridical link doctrine to "conflict[]" with Supreme Court precedent in a recent decision in *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 288 (6th Cir. 2023). There, the Sixth Circuit relegated the juridical link doctrine as a theory "originat[ing] from dicta in a 1973 case that expressed a desire for the 'expeditious' resolution of disputes." *Id.* (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)). The Sixth Circuit nevertheless found that "expediency concerns cannot supplant Article III's separation-of-powers protections." *Fox*, 67 F.4th at 288 (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013)). And though Plaintiffs rely on expediency arguments to advocate for the resolution of their class action in one fell swoop, such arguments alone do not enfranchise this Court with jurisdiction over matters that it otherwise does not have. As such, Plaintiffs do not fall within *Thompson*'s "juridical link" exception for purpose of Article III standing.

### iii.    Predominance

The Court need only briefly address predominance because the pleadings show that Named Plaintiffs cannot meet this requirement. To demonstrate predominance, parties seeking class recognition must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ.

P. 23(b)(3). The predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Amchem*, 521 U.S. at 624. A predominance analysis requires a court to put the common issues on one side, the individual issues on the other, and "qualitatively evaluate which side 'predominates.'" *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 252 (6th Cir. 2024) (quoting *Fox v. Saginaw County*, 67 F.4th 284, 300 (6th Cir. 2023)). Although individual differences between class members are expected, they "must be of lesser overall significance[,] and they must be manageable in a single class action[.]" *Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 142 (N.D. Ohio 2012) (citation omitted). When a case requires "many individual inquiries, a class action is not the superior form of adjudication." *Bearup v. Cintas Corp. No. 2*, No. 1:21-cv-151, 2022 WL 79852, at *3 (S.D. Ohio Jan. 7, 2022) (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012)).

Defendants argue for dismissal of Plaintiffs' class claims because such claims "do not fulfill the predominance requirement mandated by Fed. R. Civ. P. 23(b)(3)." Doc. 39, PageID 811. Defendants contend that the laws underpinning Plaintiffs' claims "vary significantly" across dozens of jurisdictions. *Id*. Defendants' request to strike the class action allegations are premised on three points. *First*, Ohio's choice-of-law rules apply the law of the jurisdiction where the injury occurred would and thus would entail an analysis of thirty-nine relevant jurisdictions—a task that would be "impracticable and unmanageable." *Id*. at PageID 812. *Second*, Plaintiffs cannot demonstrate that there are "issues of fact that predominate among the proposed classes." *Id*. at PageID 813. *Third*, striking the class action allegations is

procedurally proper at the motion to dismiss stage.[18] *Id.* (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)).

The Sixth Circuit has recognized that common legal issues may not predominate where the laws of multiple jurisdictions apply to a class action. *See Pilgrim*, 660 F.3d at 947 (finding that because the "laws of the State where each injury took place would govern these claims ... no common legal issues favor a class-action approach"). Indeed, product liability cases often turn on specific state law requirements. *See, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 938 (6th Cir. 2014) (performing a "state-by-state *Erie* analysis" for a misrepresentation-based product liability claim); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 792–96 (E.D. Mich. 2019) (analyzing a defendant's pre-sale knowledge of a defect to resolve fraudulent concealment claims under the laws of Illinois, Michigan, Missouri, Nevada, Ohio, Pennsylvania, and Virginia). If "more than a few" of the laws of the respective jurisdictions differ, "the district judge would face an impossible task of instructing a jury on the relevant law." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). Similarly, courts in this Circuit have found that common issues of fact may not predominate where there are "substantial factual differences in various plaintiffs' claims." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 946 (E.D. Mich. 2022) (citing *Pilgrim*, 660 F.3d at 947).

This Court finds that common questions of law and fact do not predominate here. Plaintiffs do not "overcome the key defect[s]" that "factual variations among the[ir] claims

---

[18] Defendants' third point is well-taken. A court may indeed "strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Smith v. Cash Am. Int'l, Inc.*, No. 1:15-cv-760-MRB, 2019 WL 2352921, at *2 (S.D. Ohio June 4, 2019) (citing *Pilgrim*, 660 F.3d at 945).

abound" and that their claims "must be resolved under different legal standards." *Pilgrim*, 660 F.3d at 945, 948. When a putative class action contains named plaintiffs or class members from several states, courts must undertake a choice-of-law analysis to determine which state laws apply to which claims. *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012). Federal courts sitting in diversity should apply the choice-of-law rules of the state in which they sit. *Muncie Power Prods. Inc. v. United Tech Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Ohio's choice-of-law rules therefore apply to the various state law claims presently before the Court. Under such rules, "the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Pilgrim*, 660 F.3d at 946 (citing *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984)). So, as is the case here, the laws of consumer protection, unfair competition, and deceptive trade practices from Named Plaintiffs' nearly forty respective jurisdictions will govern their claims. When coupled with the material variations between those laws, such an extensive and wide-ranging analysis is untenable in a class action context.

Even if Plaintiffs "could overcome this problem by demonstrating considerable factual overlap," Plaintiffs at best "establish only that there is *some* factual overlap [among their claims], not a predominant factual overlap." *Pilgrim*, 660 F.3d at 947–48. As such, Plaintiffs' "proposed litigation embodies a trial court's nightmare of a litigation monster." *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 277 (D.D.C. 1990). Factual variations concerning dozens of product configurations and models and at least two remedial actions that occurred during the proposed class period "threaten to overwhelm the Court." *Id*. When the "myriad of factual permutations are piled upon layers of legal standards and choice of law dilemmas, this

litigation appears to take on epic proportions." *Id*. Therefore, striking the class allegations for lack of predominance is warranted.

### a. Unjust Enrichment (Count II)[19]

In Count II, Named Plaintiffs bring an unjust enrichment claim on behalf of all Plaintiffs in the Nationwide Class and, in the alternative, all State Classes. Second Am. Compl., ¶¶ 458–68. Although the elements of unjust enrichment vary by jurisdiction, "when stripped to its essence, a claim of unjust enrichment requires [plaintiffs] to allege sufficient facts to show that [defendants] received a benefit and *under the circumstances of the case*, retention of the benefit would be unjust." *In re Auto. Parts Antitrust Litig*., No. 12-md-02311, 2014 WL 2993753, at *25 (E.D. Mich. July 3, 2014) (emphasis added). Put differently, the typical elements of a state-law claim for unjust enrichment would require an individualized inquiry of whether: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted the benefit; and (3) injustice would occur if the defendant did not pay the plaintiff for the value of the benefit." *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 709 (E.D. Mich. 2020) (citing *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975, 1007–08 (E.D. Mich. 2017)). These elements "examine the details of the transaction between the parties, the purchaser's expectations, reliance on the seller's statements, and other individualized details." *In re Nissan N. Am., Inc. Litig*., 122 F.4th 239, 250 (6th Cir. 2024). This examination reflects the nature of equitable actions, which draw on "'broad considerations of

---

[19] In their October 2, 2024 Motion for Class Certification (Doc. 68), Plaintiffs moved to certify a class under only one (1) claim: a class of plaintiffs who suffered injuries resulting from the alleged "negligence of Defendants in marketing, selling, manufacturing, and producing Mainstays candles." Doc. 68, PageID 1201. Though their pending Motion for Class Certification is confined to a negligence claim, Plaintiffs still maintain other potential class-wide claims, including unjust enrichment for a proposed nationwide class. The Court will therefore construe the unjust enrichment claim (Count II) as a nationwide class allegation claim, especially because Plaintiffs' Second Amended Class Action Complaint qualifies it as such. *See* Second Am. Compl., ¶¶ 458–68.

equity and justice' that frequently change in context." *Id.* (internal quotations omitted). And it explains why unjust enrichment claims tend not to survive a predominance analysis.

*First*, as it pertains to Named Plaintiffs' "nationwide" claim for unjust enrichment, Ohio's choice of law rules dictate that the law of the jurisdiction where the injury occurred controls unless there is another jurisdiction with a more significant relationship. *Morgan v. Biro Mfg. Co.*, *Inc.*, 474 N.E.2d 286, 289 (Ohio 1984). With the alleged injuries having occurred in nearly forty jurisdictions, no one state law would control. Thus, the unjust enrichment pleaded on a nationwide basis "must be stricken because [Named] [P]laintiffs have failed to identify any appropriate source of law … [or] legal authority endorsing the pleading in gross of such a purported 'national claim' under an unspecified body of common law." *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d 746, 786 (E.D. Mich. 2023); *see also id.* at 761 ("The Sixth Circuit has held that a nationwide class claim may not proceed when it incorporates the laws of several states.") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).

*Second*, as it relates to Named Plaintiffs' unjust enrichment claims brought on behalf of thirty-eight State Classes, such scrutiny would be unmanageable in a class action context. To assess whether each Named Plaintiff has stated a class claim for unjust enrichment would involve an inherently individualized inquiry of each person in each class as to the laws and equitable doctrines of each state. While some courts have indeed certified classes based on claims of unjust enrichment, "[d]ue to the necessity of this inquiry into the individualized equities attendant to each class member," many courts have nonetheless "found unjust enrichment claims inappropriate for class action treatment." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). "Common questions will rarely, if ever, predominate an

unjust enrichment claim." *Id.*; *see also Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 184 (3d Cir. 2014) (finding that a claim of unjust enrichment claim "would require individualized analyses into whether each putative class member was wrongfully harmed, such that the class could not be readily ascertained").

Material conflicts among states' laws on unjust enrichment have compelled many courts to deny class certification or strike class action allegations, at least in part, on that basis. *See Pilgrim v. Universal Health Card, LLC,* No. 5:09-cv-879, 2010 WL 1254849, at *4 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011); *see also Siegel v. Shell Oil Co.,* 256 F.R.D. 580, 583–85 (N.D. Ill. 2008) (finding plaintiffs failed to establish predominance due to multi-state law conflicts and material differences on unjust enrichment); *Corwin v. Laws. Title Ins. Co.*, 276 F.R.D. 484, 485–86 (E.D. Mich. 2011) (finding class certification inappropriate because "individual analysis of each class member's transaction" for the unjust enrichment claim would render the class action "not an efficient method for resolving [a] dispute [where] the individual issues would predominate"); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003) (finding predominance lacking where plaintiffs failed to persuade the court that "the laws concerning unjust enrichment … are not significantly or materially different"); *In re Conagra Peanut Butter Prods. Liability Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. 2008) ("This morass is useful to establish not only the lack of uniformity of unjust enrichment claims across the country, but also the inferiority of class-wide resolution due to discerning the many differing legal standards."); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 533–34 (N.D. Ill. 2008) ("[A]s noted by the significant weight of authority detailed above, the differences in the unjust enrichment laws are sufficiently substantive to preclude class certification."); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (finding that because "variances exist

in state common laws of unjust enrichment," "the claim of unjust enrichment is packed with individual issues and would be unmanageable"). Without adopting all of the reasoning in these aforementioned decisions, this Court finds that the "elements necessary to establish a claim for unjust enrichment … vary materially from state to state" such that predominance would be lacking. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) (citing Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U. L. Rev. 547, 558–60 (1986)).

For example, one of the material differences among the implicated jurisdictions' unjust enrichment laws concerns whether the defendant *directly* accepted the benefit from the plaintiff. This is a salient issue here. Plaintiffs define their proposed State Classes to include "all persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. *or its subsidiaries.*" Second Am. Compl., *passim* (emphasis added). However, numerous states require that a plaintiff must allege a *direct* benefit or some sort of *direct* interaction between the plaintiff and the defendant (*i.e.*, not a non-defendant subsidiary). *See, e.g.*, *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) ("Thus, to state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between [p]laintiffs and [defendant].") ; *Effler v. Pyles*, 94 N.C.App. 349, 353, 380 S.E.2d 149, 152 (1989) (finding that "to establish a claim for unjust enrichment [under North Carolina law], a party must have conferred a benefit" that was "consciously accepted" by the defendant); *Blurton v. Haier US Appliance Sols., Inc.*, No. 3:24-cv-225, 2025 WL 938631, at *15 (W.D. Ky. Mar. 27, 2025) (holding that an "indirect benefit or a benefit to a third party will not sustain an unjust enrichment claim" under Virginia law); *Sperry v. Crompton Corp.*, 810 N.Y.S.2d 498, 499–500 (N.Y. App. Div. 2006) (affirming the dismissal of an unjust

enrichment claim brought by New York indirect purchasers because the alleged connection between plaintiffs and defendants was too attenuated); *Spires v. Hospital Corp. of Am.*, 289 Fed. Appx. 269, 273 (10th Cir. 2008) (noting that Kansas law does not support an "indirect unjust enrichment claim"); *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So.3d 400, 403 (Fla. Dist. Ct. App. 2009) (affirming dismissal of unjust enrichment claim under Florida law where plaintiff could not "allege nor establish that it conferred a direct benefit" upon defendant). Plaintiffs' unjust enrichment claims for those who purchased their Mainstays-branded candle(s) from one of Walmart's many subsidiaries would therefore fail as a matter of law in a number of states requiring a defendant's direct acceptance of the benefit. But Plaintiffs do not spill even *one* word of ink on this subject.

Admittedly, some courts have certified classes based on claims of unjust enrichment. *See, e.g.*, *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 533 (M.D. Tenn. 2010) (certifying class claims for unjust enrichment); *Youngblood v. Linebarger Googan Blair & Sampson, LLP*, No. 10-2304, 2012 WL 4597990, at *8 (W.D. Tenn. Sept. 30, 2012) (same); *Raymo*, 475 F. Supp. 3d at 709 (same). Plaintiffs draw this Court's attention to a few cases supporting the proposition that, while states' doctrines may differ on unjust enrichment regarding whether the plaintiff must prove an actual loss or confront the availability of various defenses, *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148 (S.D.N.Y. 2008), "those differences do not materially affect the 'two fundamental elements' of an unjust enrichment claim—that 'the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.'" *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087, 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) (citing *In re Mercedes-Benz*, 257 F.R.D. 46, 58 (D.N.J. 2009)). But Plaintiffs

48

have not cited to any binding decision from this Circuit regarding the certifiability of an unjust enrichment class allegation, especially in cases where the plaintiffs there, as here, proposed dozens of state classes and well over a hundred sub-classes.

Moreover, the nature of Plaintiffs' unjust enrichment claims requires an inherently individualized inquiry. The crux of Plaintiffs' class allegations here is that Defendants were unjustly enriched because of their fraudulent concealment and affirmative misrepresentation. Plaintiffs claim that the "benefits were obtained by Defendants under false pretenses *because* of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the products." Second Am. Compl., ¶ 462. Plaintiffs contend that they purchased Mainstays-branded candles "*[a]s a result* of Defendants' deceptive, negligent, and misleading labeling, advertising, manufacturing and sales" of the products. *Id*. ¶ 461. But "reliance looms large in fraud claims." *In re Nissan N. Am., Inc. Litig*., 122 F.4th at 251. In this instance, it is "hard to see how the [proposed] class could assert with one voice that they had all relied on [Defendants'] statements [deceptions, concealment, or misrepresentations] or suffered the same damages because of that reliance." *Id*. In other words, the Court is not persuaded that "reliance can be presumed so broadly in each instance" for which Named Plaintiffs and the proposed class members seek relief. *Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 409 (E.D. Mich. 2023).

Plaintiffs counter that state law "variations should not prevent [them] from proceeding with their class claims" because "[they] have proposed alternative state subclasses for its unjust enrichment count." Doc. 43, PageID 895–96. Thus, as Plaintiffs contend, to the extent that there are material variations in state laws, the Court could simply "choose not to certify that class." *Id*. at PageID 895. But the abundant availability of sub-classes does not solve the

underlying issue of a lack of predominance. As with most equitable claims, "assessing liability here will require a fact-sensitive, totality-of-the-circumstances analysis." *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 412 (S.D. Ohio 2023). Such "fact-specific questions would quickly outnumber the common issue[s]" alleged by Plaintiffs. *Russell v. Citigroup, Inc.*, No. 12-16-DLB-JGW, 2015 WL 9424144, at *9 (E.D. Ky. Dec. 22, 2015). It is precisely because the Court would need to make an unquantifiable amount of "individualized determinations" that renders this unjust enrichment class allegation "ill-equipped for class-wide" treatment. *Tarrify Props., LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022). Thus, the unjust enrichment class action allegations must be stricken as currently pleaded.

### b.        Negligence (Count I)

The deficiencies in the negligence class claims also warrant dismissal. In Count I of the Second Amended Complaint, Named Plaintiffs bring a negligence claim on behalf of all Plaintiffs in the Nationwide Class and, in the alternative, all State Classes. Second Am. Compl., ¶¶ 444–57. Plaintiffs contend that Defendants breached their duty of care by producing, manufacturing, and selling Mainstays-branded candles without reasonably safe specifications, by failing to require or perform safety testing and adequate quality control, and by neglecting to include an adequate warning to Plaintiffs about the product defects. *Id.* ¶ 449. Furthermore, Plaintiffs allege that Defendants are negligently "continuing to manufacture and sell Mainstays-branded candles" and have "fail[ed] to take any remedial or corrective action in response to reports of Mainstays candles functioning unsafely." *Id.*

Defendants argue the negligence class claims would fail the predominance requirement of Fed. R. Civ. P. 23(b)(3). Doc. 39, PageID 811. Defendants posit that abundant

"material variations in the factual scenarios and products at issue" would defeat predominance. Doc. 38, PageID 773. Defendants assert that the injuries allegedly suffered by Named Plaintiffs and the existence of dozens of different candle combinations create factual scenarios that are "disparate and far from common [as] to each claim." *Id*. at PageID 773–74.

This Court agrees with Defendants—solely as it relates to the factual variations. Plaintiffs have "failed to persuade the Court that their claims are susceptible to common proof, and that individualized issues will not overwhelm the litigation." *Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 404 (E.D. Mich. 2023). The Court declines to hold at this juncture that the laws of negligence vary among the at-issue jurisdictions so materially that a negligence class action allegation could not be maintained at all.[20] Rather, the Court finds that the *factual* context underpinning Plaintiffs' negligence class claims suggests that common questions of fact would not "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

*First*, not all proposed class members would have suffered a concrete injury from a Mainstays-branded candle. Without even commonly alleging an injury, this alone is enough to dismiss the negligence class claims. *See Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 294 (6th Cir. 2023); *see also Loreto v. Procter & Gamble Co.*, No. 09-cv-815, 2013 WL 6055401, at *4 (S.D.

---

[20] Circuits have split over this issue. *Compare In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit.") *with Matter of Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300–01 (7th Cir. 1995) (refusing to certify a class based on the negligence laws of 51 jurisdictions, even though "at some level of generality the law of negligence is one"); *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1085 ("If more than a few of the [negligence] laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

Ohio Nov. 15, 2013) (granting a motion to strike class allegations because putative class members lacked standing).

*Second*, Plaintiffs do not assert a "common defect" among the (at least) eighty-four different Mainstays-branded candle combinations, including wick types, chemical formulations (*i.e.*, fragrances), and candle sizes. Rather, Plaintiffs again allege in conclusory fashion that every Mainstays-branded candle has been negligently manufactured and sold since 2016. Plaintiffs appear to contend that the Mainstays *brand* is defective, not that a particular wax formulation, wick composition, or size of a specific type(s) of Mainstays-branded candle is defective. The Court has scoured caselaw in this Circuit in search of examples where such wide-ranging and all-encompassing class allegations of a "brand defect" withstood Rule 12 or Rule 23 scrutiny. The Court is hard-pressed to find even one. *See, e.g.*, *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 682 (E.D. Mich. 2020) (concerning *two* model numbers of allegedly defective transmissions in *specific* car models and years of production); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d at 983 (concerning alleged electronic gearshift design defects in *specific* car models between 2012 and 2015); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 812 (S.D. Ohio 2012) (concerning alleged defects in the cooling system of *five specific* sport utility vehicle models between 2003 and 2010); *Meta v. Target Corp.*, 74 F. Supp. 3d 858, 859 (N.D. Ohio 2015) (concerning *two* types of pre-moistened infant wipe products); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 497 (S.D. Ohio 2012) (concerning *one* "series" of vinyl clad window); *Est. of Pilgrim v. Gen. Motors LLC*, 596 F. Supp. 3d 808, 814 (E.D. Mich. 2022) (regarding *two* different car models between 2016 and 2013 with a defective engine). And the only other lawsuit with similar facts this Court could identify involved a purported defect in one particular type of "14.5-ounce three-

wick scented candle[]." *Brawley v. Bath & Body Works, LLC*, No. 18-cv-02098, 2019 WL 7945655, at *1 (N.D. Tex. Sept. 25, 2019). The dozens of different types of Mainstays-branded candles manufactured over some ten years would not lend to common issues of fact predominating over individual questions.

*Third*, Plaintiffs' allegation that Defendants have negligently "fail[ed] to take any remedial or corrective action" concerning Mainstays-branded candles is rebutted by Defendants' legitimate demonstration to the contrary. Second Am. Compl., ¶ 449. The 2018 market withdrawal and product reformulation and the 2023 product recall appear to have been attempts to "remed[y] those alleged flaws in some" candles. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 248 (6th Cir. 2024). While the product recall and reformulation may ultimately be proven to be inadequate, that this remedy occurred within the proposed class period bears significant weight on the sufficiency of the negligence claims alleging that no remedial action was taken whatsoever. Indeed, in vacating a class certification order, the Sixth Circuit in *In re Nissan* made the essential instruction to the district court to consider the effect of "different models" and the defendant's "efforts to remedy [product defects]" on the certifiability of the classes. *Id*. at 251. But Plaintiffs make no reasonable effort to assert a "common defect" among the many different types of candles (beyond conclusorily alleging a defective brand) or to otherwise respond to (beyond flat denial of) Defendants' remedial actions during the class period. This Court is therefore unable to consider the effects of (1) the many "different models" of Mainstays-branded candles; and (2) Defendants' "efforts to remedy [the candle defects]" on the certifiability of the negligence class claims. *Id*. And while this Court draws all reasonable inferences in Plaintiffs' favor, the abundant variability of factual scenarios, the lack of an alleged common defect or even a common fact of injury, and

the failure to reckon with these remedial actions make the negligence class claims unworkable.

Thus, Plaintiffs' negligence pleadings are "woefully" insufficient to "inform the Court [of] the feasibility of class treatment." *See Hale v. Enerco Grp.*, Inc., 288 F.R.D. 139, 147 (N.D. Ohio 2012) (addressing insufficiencies in allegations that include negligent failure to warn and negligent design of allegedly defective products). Because of these critical deficiencies, the Court finds that Plaintiffs have failed to allege a cognizable class-wide claim for negligence.

### iv.    Proposed Class Definitions

This Court also strikes the class allegations because of the overbreadth of the proposed class definitions. A class definition is overbroad where it "includes members who have not suffered harm at the hands of the defendant and are not at risk to suffer such harm in the future." *Givens v. Van Devere, Inc.*, No. 1:11-cv-666, 2012 WL 4092803, at *13 (N.D. Ohio Apr. 27, 2012); *see also McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (finding a class definition overbroad where it "would include members who have not suffered harm at the hands of [d]efendant and are not at risk to suffer such harm[.]"). Here, again, Plaintiffs' Nationwide Class definition includes "[a]ll persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015."[21] Second Am. Compl., ¶ 434. Plaintiffs' State Class

---

[21]    The entire Nationwide Class definition reads as follows:

All persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015 OR who suffered property damage and/or personal injury caused by Mainstays candles purchased from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015, AND who meet the definition of one or more of the following subclasses:

definitions vary by state, but each incorporates this element: "During the fullest period allowed by law, all persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the state of []…." *Id. passim*. In other words, if you bought a Mainstays-branded candle at any time in the past ten years, you are welcome to join a potentially interminable class.

Thus, Plaintiffs' sprawling proposed class definitions "appear highly likely to include a large number of people or entities that purchased" Mainstays-branded candles but "lack standing." *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1056 (N.D. Ohio 2022). While the proposed putative class members may suffer harm in the future, that risk alone "does not confer standing." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021)). Under the proposed Nationwide Class and State Classes definitions, the central element of all "persons and other entities who purchased Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States on or after March 15, 2015" would result in unworkable classes. Second Am. Compl., *passim*. A properly defined class "includes only members who would have standing to bring suit in their own right." *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, at *2 (N.D. Ohio Mar. 25, 2010) (quotations omitted), *aff'd*, 660 F.3d 943 (6th Cir. 2011). But here, the proposed

---

(a) Subclass I: Persons or other entities in the Nationwide Class who purchased one or more Mainstays-branded candles from Defendant Walmart Inc. or its subsidiaries in the United States for personal or household purposes on or after March 15, 2015:

(b) Subclass II: Persons in the Nationwide Class who suffered property damage as a result of a fire, high flames, candle flashover, and/or explosion attributed to the candle, whether or not the person suffering the damage was the purchaser of the candle:

(c) Subclass III: Persons in the Nationwide Class who were injured as a result of a fire, high flame, candle flashover, and/or explosion attributed to the candle, whether or not the injured person was the purchaser of the candle.

Second Am. Compl., ¶ 434.

definitions would include *any* owner or purchaser of the Mainstays-branded candles over the course of nearly a decade, not only those who have standing (*i.e.*, those injured by the candle(s)).[22] Potentially millions of unharmed people would qualify. These class definitions are fundamentally defective because they do not clearly identify "those entitled to relief." *In re Monumental Life Ins. Co.*, 365 F.3d at 413 (citation omitted); *see also Boykin*, 2025 WL 962806, at *4, n.2 (striking class action allegations relating to a group of "users who did not experience property damage from the [product]" because those proposed class members "cannot show injury and lack standing"). Therefore, the class action allegations must be stricken.

## IV. INDIVIDUAL NAMED PLAINTIFF ALLEGATIONS (Counts III through XXXVIII)

The Court construes the remaining thirty-six (36) counts as individual Named Plaintiff allegations against Defendant Walmart.[23] While there are variations within these claims, the essential charge is this: by knowingly selling and manufacturing candles with defects, by failing to notify customers or recall candles, by failing to warn consumers, by making materially false representations of the safety of the products, and by fraudulently concealing the known defects of the candles, Defendants engaged in unfair, deceptive, and

---

[22] The Court also notes that many potential class members' claims in the proposed class definitions would be barred by the applicable statute of limitations. Plaintiffs state they "bring no claims for damages that arose before March 4, 2016." Doc. 43, PageID 885. They plead that Defendant's fraudulent concealment "should toll the statute of limitations as to all claims" that begin or occur after that date. *Id.* However, Plaintiffs define their proposed classes to commence on or after March 15, 2015. Second Am. Compl., ¶ 434. Thus, many potential class members would not have claims tolled by the statute of limitations beginning nearly a year after. A class with members whose claims are barred by the statute of limitations would likely fail for overbreadth. *See Price v. Dir.*, No. 1:13-cv-74, 2016 WL 254976, at *2 (S.D. Ohio Jan. 20, 2016); *Sprague v. Universal Transp. Sys. LLC*, No. 1:18-cv-165, 2020 WL 13528336, at *2 (S.D. Ohio Feb. 24, 2020).

[23] Though the Candle-lite Defendants are dismissed, the Court still relies on information and arguments provided for in their briefing.

56

unconscionable acts. Importantly, Defendants intentionally used deception, false pretense, false promise, misrepresentation and/or concealment of material facts regarding the harmful nature of Mainstays-branded candles with an intent to mislead and deceive Named Plaintiffs.[24] And all the while, Defendants had exclusive knowledge of material facts concerning the defective nature of the candles.

Walmart urges the Court to dismiss Plaintiff's individual-capacity claims against them pursuant to Rule 9(b) and Rule 12(b)(6). Walmart argues the consumer protection, unfair business competition, and deceptive trade practices claims are subject to dismissal because Plaintiffs "fail to allege the particular circumstances of Walmart's purported misrepresentations." Doc. 39, PageID 839. Walmart avers that Rule 9(b) requires specificity in alleging the nature of the fraud and a defendant's knowledge of the defect but that Plaintiffs have failed to make these necessary showings. Doc. 52, PageID 1039; *see also* Doc. 38, PageID 788.

---

[24] While certain Named Plaintiffs' allegations suggest that an omission-based theory of negligence liability is viable, the Court construes Named Plaintiffs' claims under an affirmative misrepresentations-based or fraudulent omission-based theory of liability because this is, in Plaintiffs' own words, the gravamen of their complaint.

> Plaintiffs' claims based on active misrepresentation and concealment are permissible because they are based on the "general duty not to actively deceive." Plaintiffs have cited Defendants' concealment, fraud, and suppression of material facts throughout their Second Amended Complaint. Specifically, *see* ¶¶ 47, 66, 29-431, 456, 462 465, 494, 514 of the Second Amended Complaint, as well as each count brought pursuant to a consumer protection statute. Defendants concealed the dangers of a product they represented as safe, even concealing the danger after learning that the candles were causing fires and injuries. This conduct exceeds the bounds of mere negligence. It is willful, deliberate, and actively tortious.

*See* Doc. 43, PageID 913. Plaintiffs occasionally reference "omissions" in their Response but put forth no substantive argument that the Court should assess liability through negligence. The Court therefore confines its analysis to a theory of liability sounding in fraudulent concealment and omission and deliberate misrepresentation. *See also Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted).

The Court agrees with Walmart. Here, devoid of factual content from which this Court may draw a reasonable inference, Plaintiffs' claims constitute merely bald assertions that Walmart had exclusive knowledge of the defective nature of *all* Mainstays-branded candles and that Walmart was affirmatively misrepresenting and fraudulently concealing known product defects. By failing to plead these fraud-based claims with the required specificity under Rule 9(b), Plaintiffs offer no "more than a sheer possibility that [Walmart] has acted unlawfully." *Iqbal*, 556 U.S. at 678. By parroting facts in pleadings that are only "merely consistent with [Defendant's] liability," *id*. (internal quotation marks omitted), Plaintiffs have "not nudged [their] claims ... across the line from conceivable to plausible." *Id*. at 680 (cleaned up).

Nonetheless, three claims appear to survive this screening (at least for now): Count XXVII (Violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 (McKinney 2014), *et seq*.), Count XXVIII (Violation of the New York Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350 (McKinney 2014), *et seq*.), and Count XXXII (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. §§ 201-2, 201-3 (West 2024), *et seq*.). The Court notes that Rule 9(b)'s requirement does not apply to the above states' consumer protection statutes. Nonetheless, the Court defers a conclusive ruling on the merits of these claims until Plaintiffs can establish this Court's jurisdiction to rule upon them.

## A. Standard of Review

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state

a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Indeed, under the pleading standard set forth in *Twombly* and *Iqbal,* courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors and costs of discovery. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). But the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. While a plaintiff need not set forth detailed factual allegations, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

### B. Law and Analysis

Defendants argue for the dismissal of the individual Named Plaintiffs allegations. Defendants allege Plaintiffs do not adequately plead knowledge of a defect and that their

claims are barred by the economic loss doctrine or the applicable statute of limitations.[25]
Furthermore, Defendants posit that nine states' product liability statutes abrogate certain of
Plaintiffs' claims.[26] Doc. 39, PageID 814.

### i.    Existence of a Common Material Defect

A complaint must provide sufficient notice to a defendant of the nature of the plaintiff's
claims. *Twombly*, 550 U.S. at 555 (holding that a plaintiff's statement must "give the defendant
fair notice of what the ... claim is and the grounds upon which it rests."). Courts in this Circuit
have found product liability allegations plausible where plaintiffs articulate that "the
defendant manufactured the product, that the product was used by the plaintiff, that the
product failed while being used by the plaintiff, and that *the portion of the product that failed could
be identified and is so identified in the complaint*." *Barreca v. AngioDynamics, Inc.*, No. 4:15-cv-1111,
2015 WL 5085260, at *3 (N.D. Ohio Aug. 27, 2015) (emphasis added) ("[T]he portion of the
product that failed is identified in the pleading as the frayed ends to both the catheter and port
after the catheter detached from the Mediport."); *see also Clark v. Wright Med. Tech., Inc.*, No.
3:11-cv-00162, 2011 WL 2689381, at *2 (S.D. Ohio July 11, 2011) (finding that plaintiffs

---

[25] Though certain Named Plaintiffs' claims may be barred by the statute of limitations, the Court defers consideration of this issue due to inadequate briefing. Plaintiffs allege that Defendants' "fraudulent concealment tolls the statute of limitations," Doc. 43, PageID 898, but these allegations are pled "merely [as] a procedural device." *Id.* at PageID 959. However, this Court has found that Plaintiffs have not adequately pleaded fraudulent concealment in order to toll the statute of limitations. And Plaintiffs do not explain how their allegations of fraudulent concealment can toll the statute of limitations where, in their own words, they bring no such cognizable (*i.e.*, not merely procedural) claim(s). *See Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) ("[W]ithout a cognizable claim of fraudulent concealment, the lawsuit must be dismissed….").

[26] The Court declines to rule at this juncture whether individual Named Plaintiffs' allegations are abrogated by Product Liability Acts in Ohio, Connecticut, Indiana, Kansas, Louisiana, Mississippi, New Jersey, Tennessee, and Washington. Plaintiffs attempt to salvage these claims by asserting that some of the respective statutes do not subsume claims grounded in fraud or allow for claims against sellers (rather than manufacturers). Doc. 43, PageID 910–921. But the Court cannot entertain Plaintiffs' arguments where Plaintiffs have not adequately pleaded a cognizable fraud-based claim in the first place.

plausibly stated a claim by identifying the particular and specific components in a defendant's medical product that failed); *Marcum v. DePuy Orthopedics, Inc.*, No. 12-CV-834, 2013 WL 1867010, at *5 (S.D. Ohio May 2, 2013) ("Plaintiff identifies each individual implanted piece of [d]efendant's hip replacement device, including the piece that failed, the ceramic femoral head."); *Boykin v. Procter & Gamble Co.*, No. 1:23-CV-427, 2025 WL 962806, at *11 (S.D. Ohio Mar. 31, 2025) (finding that plaintiffs sufficiently pleaded the nature of the defect by stating that the product leaked because of the failure of a "unique membrane [that] allowe[d] the product to slowly release scented oils.").

But here, Plaintiffs have failed to identify a common defect. The most that Plaintiffs allege is the failure of the product: that "a serious safety-related defect in the design and manufacture of Defendants' Mainstays candles" resulted in the candles "becoming engulfed in flames and/or exploding."[27] Second Am. Compl., ¶ 1. Not one paragraph in the Second Amended Complaint nor in Plaintiffs' briefing specifies the product defect or the specific "portion of the product[s] that failed." *Barreca*, 2015 WL 5085260, at *3. Not one iota of ink is spilled identifying whether the faulty wax formulation, the defective type of wick, or the quality of glass is the defective portion of the product. *Cf. Brawley v. Bath & Body Works, LLC*, No. 3:18-CV-02098-S, 2019 WL 7945655, at *1 (N.D. Tex. Sept. 25, 2019) (regarding a defect in 14.5-ounce three-wick scented candles). Not one word in Plaintiffs' pleadings corroborates Plaintiffs' conclusory claim that *every* single Mainstays-branded candle manufactured since 2016—despite the dozens of different candle combinations based on wax formulation, wick

---

[27] Other instances of alleged harm (*i.e.*, not indications of the portion of the product that is defective) include "excessive flames, flames that cannot be blown out or extinguished, flammable wax, and candles that explode while burning." Second Am. Compl, ¶ 2.

61

type, and candle size—shares a common defect. As such, Named Plaintiffs have failed to adequately plead the existence of a defect in order to avoid dismissal.

### ii. Sufficiency of the Allegations[28]

The Court further finds Plaintiffs have not adequately alleged state-law consumer protection, unfair competition, and deceptive trade practices claims in accordance with the particularity requirement of Fed. R. Civ. P. 9(b). Plaintiffs have not sufficiently alleged Walmart's knowledge of the purported defects in order to substantiate claims of fraudulent concealment or omission and active misrepresentation.

Rule 9(b) requires plaintiffs claiming fraudulent misrepresentation to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). For fraud-by-omissions claims, Rule 9(b) has a slightly relaxed (although still heightened) pleading requirement and does not demand such claims to "specify the time, place, and specific content of an omission as precisely as would a ... false representation claim." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) (citing *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1098–99 (N.D. Cal. 2007). Nonetheless, "liability cannot attach for a

---

[28] Interspersed throughout their consumer protection and deceptive trade practices claims are Plaintiffs' brief mentions that Walmart "should have known" about the candle defects and the corresponding risks of injury. Second Am. Compl., *passim*. At first glance, a claim of what Walmart should have known appears more actionable at common law than claims of Walmart's knowing and intentional deception and active misrepresentations. Nonetheless, the crux of the individual Named Plaintiffs' allegations is that Walmart engaged in deceptive, fraudulent, and consciously misleading conduct. What Walmart "should have known" about the candle defects appears peripheral in Plaintiff's pleadings to their claims that Walmart actively disregarded what they *did* know of the candle defects. Because of limited briefing as to whether Walmart could be held liable on a theory of what it "should have known" under the relevant statutes here, the Court confines its analysis to the central element of the allegations herein: whether Plaintiffs have adequately pleaded knowledge of the candle defects as part of their fraud-based claims.

fraudulent omission [or affirmative misrepresentation] theory under any state fraud or consumer protection law without a properly pleaded "what" of the alleged omission, namely, [a defendant]'s *knowledge* of the [product] defect." *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (emphasis added); *see also Kondash v. Kia Motors Am., Inc.*, No. 1:15-cv-506, 2016 WL 11246421, at *11 (S.D. Ohio June 24, 2016) (finding a fraud-by-omission claim sufficiently pled where plaintiff alleged defendant's "*knowledge* of the supposed defects and problems" as part of "the fraudulent scheme") (emphasis added); *Ambrose v. Gen. Motors LLC*, No. 19-cv-13449, 2022 WL 3701946, at *20 (E.D. Mich. Aug. 26, 2022) ("Plaintiffs do not meet their Rule 9(b) particularly requirements, as the [omission-based] allegations made in this case do not support a plausible inference that [the defendant] had pre-sale *knowledge* of the alleged defect.") (emphasis added).

Here, Plaintiffs wish to impute exclusive knowledge of an undefined defect to Walmart based on undated consumer complaints and a smattering of 2016 Facebook posts. A district court "need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Because these fraud-based allegations do not sufficiently plead knowledge, they must be dismissed. But the Court will grant Plaintiffs leave to amend these allegations to cure this deficiency.

### a.       Consumer Protection Claims[29]

The Second Amended Complaint asserts claims against Walmart[30] under the consumer protection statutes of various jurisdictions: Ohio, Alaska, Arizona, California, Colorado, Connecticut, Iowa, Kansas, Maryland, Michigan, Minnesota, New Hampshire, New Jersey, North Carolina, Oklahoma, Oregon, Pennsylvania, Tennessee, Utah, Virginia, Washington, and the District of Columbia. *See* Second Am. Compl. Defendants argue that Named Plaintiffs have failed to plead with particularity the allegedly unfair, deceptive, or

---

[29] The consumer protection claims appear to be: Count III (Violation of Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 (West 2024), *et seq.*), Count IV (Violation of the Alaska Consumer Protection Act, Alaska Stat. § 45.50.471 (2024), *et seq.*), Count V (Violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522 (2024), *et seq.*), Count VII (Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (West 2024), *et seq.*), Count X (Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 (2024), *et seq.*), Count XI (Violation of the Connecticut Consumer Protection Act, Conn. Gen. Stat. § 42-110g (2024), *et seq.*), Count XII (Violation of the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901 (2024), *et seq.*), Count XIV (Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1 (2024), *et seq.*), Count XVI (Violation of Iowa Consumer Frauds Act, Iowa Code § 714.16 (2024), *et seq.*), Count XVII (Violation of the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 (2024), *et seq.*), Count XVIII (Violation of the Maryland Consumer Protection Act, Md. Code Ann. Com. Law Code § 13-101 (West 2024), *et seq.*), Count XIX (Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Serv. § 445.91 (West 2024), *et seq.*), Count XX (Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 (2024), *et seq.* and Minn. Stat. § 8.31 (2024), *et seq.*), Count XXV (Violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2 (2024), *et seq.*), Count XXVI (Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 (West 2024), *et seq.*), Count XXIX (Violation of the North Carolina Consumer Protection Act, N.C. Gen. Stat. § 75-1.1 (2023), *et seq.*), Count XXX (Violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751 (2024), *et seq.*), Count XXXI (Violation of the Oregon Consumer Protection Act, Or. Rev. Stat. § 646.605 (2023), *et seq.*), Count XXXII (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. §§ 201-2,201-3 (West 2024), *et seq.*), Count XXXIII (Violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 (2024), *et seq.*), Count XXXV (Violation of the Utah Consumer Sales Protection Act, Utah Code Ann. § 13-11-1 (West 2024), *et seq.*), Count XXXVI (Violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59-1-196 (2023), *et seq.*), and Count XXXVII (Violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 (2024), *et seq.*).

[30] These claims are technically alleged as to all Named Defendants. However, for the reasons set forth above, Named Plaintiffs have not adequately alleged injuries-in-fact that are fairly traceable to Candle-lite Defendants. Moreover, to the extent that Candle-lite Defendants had "knowledge" of the purported candle defects, Plaintiffs base this speculative assertion *only* on "information and belief." Second Am. Compl., ¶ 427. As the Court dismisses the Candle-lite Defendants on the basis of standing, the Court construes the remaining individual Named Plaintiff allegations solely against Defendant Walmart.

fraudulent acts as required by these states' statutes. *See, e.g.*, Doc. 49, PageID 989; Doc. 52, PageID 1045.

In each of the nearly two dozen consumer protection claims, Named Plaintiffs recite the following allegations: (1) Walmart had exclusive knowledge of the (undefined) defect; (2) despite having exclusive knowledge of the (undefined) defect, Walmart *knowingly* or *intentionally* engaged in unfair, deceptive, and/or unconscionable acts or practices by manufacturing defective candles, failing to disclose the defects, and making material misrepresentations that Mainstays-branded candles were safe for ordinary use; and (3) that Walmart has continued to "actively and fraudulently" conceal the known defects associated with every Mainstays-branded candle manufactured since March 2016. Second Am. Compl., *passim*. These claims of deceptive misrepresentations, fraudulent omissions or concealment, and failing to warn or disclose are all premised upon Walmart's purported knowledge of the candle defects and its intentional disregard of them. In other words, Plaintiffs advance a theory of liability that Walmart's deliberate misrepresentations and fraudulent omissions—not its mere negligence—caused them harm. Because Plaintiffs' "consumer protection claims sound in fraud, they must meet Rule 9(b)'s heightened pleading standard."[31] *Matanky*, 370 F.

---

[31] The parties disagree as to whether a plaintiff must plead knowledge of the safety risk at hand in order to maintain a consumer protection claim. Plaintiffs assert that, despite "not [being] required to plead knowledge, they" have adequately "[done] so." Doc. 43, PageID 957. To support the argument that knowledge is not required for consumer protection claims, Plaintiffs rely on a footnote in *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 29 (6th Cir. 2021). *See* Doc. 43, PageID 958. As best as the Court can understand Plaintiffs' argument, *Genaw* stands for the proposition that *constructive* knowledge can suffice for purposes of a negligent failure-to-warn claim. Therefore, as Plaintiffs declare, because their "consumer protection claims are predicated, in part, on Defendants' failures to warn[,]" *id.* at PageID 959, and because they adequately pleaded Defendants' constructive knowledge vis-à-vis consumer complaints and online posts, the pleading requirements have been satisfied.

These arguments are unavailing. First, *Genaw* dealt with negligent failure-to-warn. *Genaw*, 856 F. App'x at 25, 28. Here, Plaintiffs aver that Defendants *fraudulently* failed to warn consumers of defects in Mainstays-

Supp. 3d at 797 (citing *Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *14 (E.D. Mich. June 7, 2018)). As to each of these claims, Plaintiffs maintain that they have "adequately pleaded [Walmart's] knowledge" of the defect at the time of sale. Doc. 43, PageID 957.

Not so. Plaintiffs' basis for Walmart's purported pre-sale knowledge of the defects of Mainstays-branded candles is rooted in a few undated consumer complaints and a 2016 Facebook post. *See* Second Am. Compl., ¶¶ 424–26. These complaints—by themselves—do not impute pre-sale knowledge to Walmart. To assign pre-sale knowledge of a product defect to a defendant solely based upon consumer complaints and "internet posting[s] would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery." *Oliver v. Funai Corporation, Inc.*, No. 14-cv-04532, 2015 WL 9304541, at *4 (D.N.J Dec. 21, 2015) (cleaned up). "All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet." *Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 2488155, at *4 (D.N.J. Aug. 11, 2009). Hence, it is an extraordinary—and unreasonable—inference to assert that a few undated consumer complaints and Facebook posts from 2016 would corroborate Plaintiffs' allegation that

---

branded candles. *Genaw* specifically noted that "fraud claim[s] … [are] subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), which mean[s] that plaintiffs ha[ve] to 'state with particularity' the factual allegations that defendant had knowledge of the allege defect." *Id.* at 28, n.2 (citations omitted). Second, *Genaw* imputed constructive knowledge to the defendant because the plaintiff's allegations were based on reports of "pre-production testing and quality control procedures." *Id.* Here, Plaintiffs' allegations of knowledge are "buttressed" by undated consumer complaints and Facebook posts. Third, turning to Plaintiffs' arguments that its fraud-based claims do not require a pleading of knowledge (Doc. 43, PageID 957), many of the state laws under which Plaintiffs assert claims require knowledge of the defect by the defendant, or at least an allegation that the defendant should have discovered the defect. *See Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *4, n.5 (E.D. Mich. Jan. 4, 2019) (providing citations for the relevant state laws of Arizona, California, Colorado, Maryland, Michigan, Minnesota, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee). But Plaintiffs' briefing does not substantively address the knowledge requirement of these jurisdictions' laws.

Walmart had exclusive knowledge of an undefined defect in *every* single Mainstays-branded candle manufactured since then and that it has continued to fraudulently conceal and actively misrepresent the dangers of those undefined defects throughout the present day.

Moreover, courts in this Circuit have routinely found that consumer complaints—even made directly to a defendant—are not enough *by themselves* to allege pre-sale knowledge of a defect. *See, e.g.*, *Matanky*, 370 F. Supp. 3d at 793 (holding that plaintiffs could not "rely on complaints … to show [defendant's] knowledge" where the complaints concerned different models and where the models underwent "design changes" during the proposed class period); *Elliott v. Gen. Motors LLC*, 605 F. Supp. 3d 937, 946 (E.D. Mich. 2022) (finding plaintiffs failed to plausibly plead pre-sale knowledge where allegations relied on online consumer complaints, an earlier lawsuit regarding previous models, and a consumer satisfaction campaign); *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 761 (E.D. Mich. 2019) ("[P]laintiff's allegations of consumer complaints online or to [a third party] are insufficient to support a finding of [defendant's] knowledge"); *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 295 (N.D. Ohio 2020) ("[C]ustomer complaints are insufficient to support [p]laintiff's allegation that [defendant] had knowledge of the … defect."); *but see In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 636 (E.D. Mich. 2019) (finding pre-sale knowledge was plausibly pleaded when based on "sources such as pre-release evaluation and testing; investigations leading to dealer service bulletins; repair data; replacement part sales data; early consumer complaints made directly to [defendant], … testing done in response to those complaints; [and] aggregate data from [defendant's] dealers").

Speculation also abounds as it relates to Plaintiffs' contentions that Walmart has been "actively and fraudulently conceal[ing] the known defects associated with" Mainstays-branded candles since March 2016. *See* Second Am. Compl., *passim*. The Second Amended Complaint "does not allege any specific facts that would amount to active concealment." *Mross v. Gen. Motors Co., LLC*, No. 15-C-0435, 2016 WL 4497300, at *3 (E.D. Wis. Aug. 25, 2016). There is nothing in Plaintiffs' pleadings that is the "equivalent to a seller's hiding signs of termites with wallboard" or that Walmart "discouraged potential buyers from proceeding with investigations that likely would have revealed the defect." *Id*. And Plaintiffs' conclusory—arguably conspiratorial—allegations of a decade-long scheme of fraudulent concealment are rebuttable by Walmart's public disclosure of the 2018 voluntary market withdrawal of certain Mainstays-branded candles.

Because of these fundamental deficiencies in Plaintiffs' pleadings, "[P]laintiffs have not met their burden under Rule 9(b)." *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 497 (E.D. Mich. 2025). As currently pleaded, the following state statutory claims will not proceed on an affirmative misrepresentation or fraudulent omission theory of liability:

- **Ohio Consumer Sales Practices Act** ("OCSPA") (Count III), *see Detrick v. KCS Int'l Inc.,* No. 5:24-CV-1154, 2025 WL 1133516, at *18 (N.D. Ohio Apr. 17, 2025) (finding that Rule 9(b) applies to Ohio Consumer Sales Practices Act claims sounding in fraud).
- **Alaska Consumer Protection Act** ("ACPA") (Count IV); *see Moda Assurance Co. v. New Life Treatment Ctr.*, No. 3:23-cv-00132-SLG, 2024 WL 181830, at *7 (D. Alaska Jan. 17, 2024) (invoking Rule 9(b) to assess ACPA misrepresentation claims "grounded in fraud" or "sound[ing] in fraud") (internal citations omitted).
- **Arizona Consumer Fraud Act** ("ACFA") (Count V); *see Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 876 (11th Cir. 2023) ("The ACFA and intentional misrepresentation claims therefore fail under Rule 9(b).").
- **California Consumer Legal Remedies Act** ("CCLRA") (Count VII); *see Squeo v. Campbell Soup Co.*, No. 24-cv-02235, 2024 WL 4557680, at *3 (N.D. Cal. Oct. 22, 2024) (finding that Rule 9(b) applies to CCLRA claims that sound in fraud).
- **Colorado Consumer Protection Act** ("CCPA") (Count X); *see HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011) (analyzing the CCPA under Rule 9(b) and finding that a plaintiff must "set forth the time, place

and contents of the false representation, the identity of the party making the false statements and the consequences thereof.") (internal citations omitted).

- **Connecticut Consumer Protection Act**, Conn. Gen. Stat. § 42-110g (Count XI); *see Dubois v. Maritimo Offshore Pty Ltd.*, 422 F. Supp. 3d 545, 561 (D. Conn. 2019) (analyzing a fraudulent misrepresentation claim brought under Conn. Gen. Stat. § 42-110g through Rule 9(b)'s particularity requirement).

- **District of Columbia's Consumer Protection Procedures Act** ("DCCPPA") (Count XII); *see Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 (D.D.C. 2016) (analyzing a claim of fraudulent misrepresentation under the DCCPPA and finding that Rule 9(b) "requires a claim of fraudulent misrepresentation to be pled with particularity").

- **Illinois Consumer Fraud and Deceptive Business Practice Act** ("ICFA") (Count XIV); *see O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) ("Where an ICFA claim rests on allegations of deceptive conduct, Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud.").

- **Iowa Consumer Frauds Act** ("ICFA") (Count XVI); *see In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1096 (N.D. Cal. 2021) (analyzing a claim for affirmative misrepresentation under the ICFA and finding that the allegations were not pleaded with "any specificity" as required by Rule 9(b)).

- **Kansas Consumer Protection Act** ("KCPA") (Count XVII); *see Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007) (applying Rule 9(b) to KCPA claims sounding in fraud).

- **Maryland Consumer Protection Act** (Count XVIII); *see Wash. Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 710 (D. Md. 2020) (stating that fraud-based claims under the MCPA are subject to the Rule 9(b) heightened pleading standard).

- **Michigan Consumer Protection Act** (Count XIX); *see In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 854 (S.D. Ohio 2012) ("Rule 9(b)'s heightened pleading requirements apply to [Michigan Consumer Protection Act] allegations of fraudulent conduct.").

- **Minnesota Prevention of Consumer Fraud Act** ("MPCFA") (Count XX); *see Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 363 (D. Md. 2022) (dismissing fraud claims brought under the MPCFA for failure to meet the heightened pleading standard under Rule 9(b)).

- **New Hampshire Consumer Protection Act** ("NHCPA") (Count XXV); *see PC Connection, Inc. v. Int'l Bus. Machines Corp.*, 687 F. Supp. 3d 227, 277 (D.N.H. 2023) (analyzing NHCPA claims of fraud-based misrepresentations and omissions under Rule 9(b)).

- **New Jersey Consumer Fraud Act** ("NJCFA") (Count XXVI); *see Parker v. Howmedica Osteonics Corp.*, No. 07–02400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) ("Importantly, [NJCFA] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).").

- **North Carolina Consumer Protection Act** ("NCCPA") (Count XXIX); *see King v. Ethicon, Inc.*, No. 21-17983, 2023 WL 1475125, at *2 (D.N.J. Feb. 2, 2023) ("The heightened pleading standard under Rule 9(b) applies to [plaintiff's] fraud claim" brought under NCCPA).

- **Oklahoma Consumer Protection Act** ("OCPA") (Count XXX); *see In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 794 (C.D. Cal. 2022) (dismissing claims brought under OCPA for failure "to meet the standards set by Fed. R. Civ. P. 9(b)").
- **Oregon Consumer Protection Act** Or. Rev. Stat. 646.605 (Count XXXI); *see Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (analyzing fraud claims brought under Or. Rev. Stat. 646.605 through Rule 9(b)'s particularity requirement).
- **Pennsylvania Unfair Trade Practices and Consumer Protection Law** ("PUTPA") (Count XXXII); *see Dolan v. PHL Variable Ins. Co.*, No. 15-cv-01987, 2016 WL 6879622, at *5 (M.D. Pa. Nov. 22, 2016) (concluding that PUTPA claims that sound in fraud are subject to Rule 9(b)).
- **Tennessee Consumer Protection Act** ("TCPA") (Count XXXIII); *see McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 06-CV-80, 2007 WL 896153, at *5 (E.D. Tenn. Mar. 22, 2007) ("Plaintiff's claims under the TCPA are subject to Rule 9(b)'s specific pleading requirements.") (citations omitted).
- **Utah Consumer Sales Practices/Protection Act** ("UCSPA") (Count XXXV); *see Callegari v. Blendtec, Inc.*, No. 18-cv-308, 2018 WL 5808805, at *4 (D. Utah Nov 6, 2018) (applying Rule 9(b) to UCSPA claims sounding in fraud).
- **Virginia Consumer Protection Act** ("VCPA") (Count XXXVI); *see Myers v. Lee*, 10-cv-131, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) ("As a claim sounding in fraud, Rule 9(b)'s particularity requirements apply to the [Virginia Consumer Protection Act].") (internal citations omitted).
- **Washington Consumer Protection Act** ("WCPA") (Count XXXVII); *see In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1037 (W.D. Wash. 2025) ("Rule 9(b) applies to [WCPA] claims when they allege a specific intent to deceive or a unified fraudulent course of conduct.") (cleaned up).

The Court **GRANTS** Plaintiffs leave to amend their consumer protection claims to address these deficiencies.

### b. Deceptive Trade Practices Claims[32]

Next, Plaintiffs maintain Walmart engaged—and continues to engage—in "unconscionable," "deceptive," "outrageous," "egregious," and "malicious[]" acts or trade

---

[32] The deceptive trade practices claims appear to be: Count VI (Violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 (West 2017), *et seq.*), Count VIII (Violation of the California False Advertising Law, Cal. Civ. Code § 1750 (West 2024), *et seq.*), Count IX (Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 (West 2024), *et seq.*), Count XIII (Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (2024), *et seq.*), Count XV (Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 (2024), *et seq.*), Count XXI (Violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 (2022), *et seq.*),

practices by having made materially false misrepresentations of the safety of Mainstays-branded candles or by fraudulently omitting the known issues associated with the products.[33] Second Am. Compl., *passim*. Plaintiffs allege that by marketing, selling, and distributing Mainstays-branded candles, "Defendants made actionable statements that the products were free of defects and safe and fit for their ordinary intended use and purpose." *Id.* ¶ 65. Plaintiffs contend Walmart acted with a particular mental state: that Walmart deceived consumers with "willful disregard" of consumers' rights because it had "exclusive knowledge of … the defective nature of the Mainstays candles." *Id. passim.*

That may be. But these are still conclusory allegations that are "not enough to survive 12(b)(6) dismissal." *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 733 (6th Cir. 2007). "Simply labeling a trade practice as deceptive in a complaint does not pass 12(b)(6) muster." *Smith*, 988 F.3d at 882. Such a claim "still needs to specify who was deceived and how." *Id.* at 883. That means, in accordance with Fed. R. Civ. P. 9(b), "the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury."[34] *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d

---

Count XXII (Violation of the Minnesota False Statement In Advertisement Act, Minn. Stat. § 325F.67 (2024)), Count XXIII (Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 (2024), *et seq.*), Count XXIV (Violation of the Nevada Deceptive Trade Practices Act, 2024 Nev. Rev. Stat. 598.0903), Count XXXIV (Violation of the Texas Deceptive Trade Practices Act, Texas Bus. and Comm. Code, § 17.41 (West 2024), *et seq.*), and Count XXXVIII (Violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat.§ 100.18 (2024), *et seq.*).

[33] Other colorful words Plaintiffs use to describe Walmart's actions include "immoral, unethical, oppressive, [and] unscrupulous…" *See* Second Am. Compl., ¶¶ 596, 604, 695, 709, 981.

[34] Even under a claim for fraudulent omission, Rule 9(b) still mandates plaintiffs plead "the who, what, when, where, and how" of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). "Knowledge" of the defect is required "to show 'what' was allegedly omitted." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 277 (E.D. Mich. 2021). Here, Plaintiffs have not adequately alleged "knowledge" to give rise to a cognizable fraudulent omission claim.

493, 504 (6th Cir. 2007)). This is an essential requirement to ensure that defendants are made aware of "the precise misconduct with which they are charged [in order] to protect them against spurious charges of immoral and fraudulent behavior." *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (cleaned up).

The "fraudulent scheme" element is where Named Plaintiffs' allegations fall short. Named Plaintiffs aver that Walmart deceived them because it "repeatedly advertised, both on the Mainstays candles' labels and on websites, among other items, that the products are safe for ordinary use." Second Am. Compl., *passim*. At the same time, Walmart fraudulently concealed the known defects of the candles. To begin, a photograph of a Mainstays-branded candle label included in the Second Amended Complaint contains no such express representation of the safety of the candle. And Plaintiffs do not submit any other factual content allowing "the [C]ourt to draw the reasonable inference[,]" *Iqbal,* 556 U.S. at 678, that Walmart intentionally sought to misrepresent the safety of the candles or to otherwise fraudulently conceal the alleged defects—which first must have been known in order to then have been knowingly concealed.[35]

---

[35] There is simply not enough information in the Second Amended Complaint to validate a fraud-based theory of liability where Walmart is alleged to have made material misrepresentations by failing to disclose information. Other caselaw in this Circuit suggests that far more information is needed. *See, e.g.*, *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 631 (N.D. Ohio 2016) (finding misrepresentations were sufficiently pleaded based on allegations of false labels and advertisements, constant redesign of the defendant's website, re-edits of promotional videos, and alterations of product preparation and application instructions); *Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*, 947 F. Supp. 2d 841, 863 (S.D. Ohio 2013) (noting a reasonable jury could have found affirmative misrepresentations based on email correspondences and specific statements made during a purchase order); *Milisits v. FCA US LLC*, No. 20-cv-11578, 2021 WL 3145704, at *10 (E.D. Mich. July 26, 2021) (finding claims of fraudulent omissions were sufficiently pled where plaintiffs based pre-sale knowledge on a defendant's decision to delay shipping products, press reports, public comments by high-level executives and consumer complaints).

That aside, a closer examination of Plaintiffs' arguments demonstrates the tenuousness of their fraud-based allegations. The overarching inference Plaintiffs appear to urge this Court to make is that, in allegedly failing to take remedial action or to warn about the defects of Mainstays-branded candles, Walmart made material misrepresentations that its products were safe for use. These affirmative misrepresentations, so the argument goes, are the result of Walmart's intentional "deceptive acts and practices." Second Am. Compl., *passim*. But this inference necessarily demands that Walmart had *knowledge* (which Plaintiffs have not adequately alleged) of the defective portion of the products (which Plaintiffs have not yet identified).[36] This inference further requires that this Court disregard evidence of remedial actions taken during the relevant time period. These remedial actions, and their public disclosure, would affect the plausibility of Plaintiffs' claim that Walmart knowingly "concealed" the defects of its candles for more than a decade.

These unspecific and implausible allegations contained in the Second Amended Complaint do not pass muster under Rule 9(b) or Rule 12(b)(6) scrutiny. As currently pleaded, the following state statutory claims will not proceed on an affirmative misrepresentation or fraudulent omission theory of liability:

- **Arkansas Deceptive Trade Practices Act** ("ADTPA") (Count VI); *see Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1085 (E.D. Ark. 2013) (applying Rule 9(b) to a claim brought under the Arkansas Deceptive Trade Practices Act).
- **California False Advertising Law** ("CFAL") (Count VIII); *see Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 99 (N.D.N.Y. 2023) (holding that the CFAL "require[s] plaintiffs to meet the pleading standards of Rule 9(b)").
- **California Unfair Competition Law** ("UCL") (Count IX); *see LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 895 (N.D. Cal. 2023) ("Rule 9(b)'s heightened pleading

---

[36] Though the Court does not engage in an exhaustive analysis of state law, the Court suspects that the same requirement of knowledge would hold true if Plaintiffs pursued a fraudulent omission claim. *See, e.g., Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 296 (N.D. Ohio 2020) ("Consequently, [p]laintiff's fraudulent omission claim is not properly pled and must be dismissed because the [defendant] cannot be expected to disclose facts that it may not have had at the time of the sale.").

standard applies to UCL, FAL, and CLRA causes of actions that are grounded in fraud or sound in fraud.") (internal quotations and citations removed); *see also Carter v. Rasier-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017) (applying Rule 9(b) pleading standards for common law negligent misrepresentation and intentional misrepresentation), *aff'd*, 724 F. App'x 586 (9th Cir. 2018).

- **Florida Deceptive and Unfair Trade Practices Act** ("FDUTPA") (Count XIII); *see Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225-26 (S.D. Fla. 2017) (collecting cases and applying particularity requirements of Rule 9(b) to FDUTPA claim based on alleged fraud).

- **Illinois Uniform Deceptive Trade Practices Act** ("IUDPTA") (Count XV); *see Cardionet, Inc. v. Lifewatch Corp.*, No. 07–cv–6625, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) ("IUDPTA ... claims sounding in fraud must also meet the pleading requirements of Rule 9(b).").

- **Minnesota Uniform Deceptive Trade Practices Act** ("MUDPTA") (Count XXI); *see Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 930 (D. Minn. 2024) ("The Rule 9(b) standard applies to MUDPTA.") (citing *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012)).

- **Minnesota False Statement In Advertisement Act** ("MFSAA") (Count XXII); *see Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity.").

- **Missouri Merchandising Practices Act** ("MMPA") (Count XXIII); *see Blake v. Career Educ. Corp.*, No. 4:08CV00821 ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases and holding that "[c]ourts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA.").

- **Nevada Deceptive Trade Practices Act** ("NDTPA") (Count XXIV); *see Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 643 (D. Nev. 2019) ("To survive a motion to dismiss, the elements of an NDTPA claim must be pled with particularity pursuant to FRCP 9(b).") (citing *Horner v. Mortgage Elec. Registration Sys.*, 711 Fed. App'x. 817, 818 (9th Cir. 2017)).

- **Texas Deceptive Trade Practices Act** ("TDTPA") (Count XXXIV); *see Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-established that '[c]laims alleging violations of the [T]DTPA are subject to the requirements of Rule 9(b).'") (quoting *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 824–25 (N.D. Tex. 2001).

- **Wisconsin Deceptive Trade Practices Act** ("WDTPA") (Count XXXVIII); *see Miller v. Vonage Am., Inc.*, No. 14-CV-379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015) ("Because a claim under the [W]DTPA sounds in fraud, it must be pleaded with particularity.").

The Court **GRANTS** Plaintiffs leave to amend their deceptive trade practices claims to address the deficiencies.

### iii.    Remaining Claims

The remaining claims are Count XXVII (Violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 (McKinney 2014), *et seq.*), Count XXVIII (Violation of the New York Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350 (McKinney 2014), *et seq.*),[37] and Count XXXII (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. and Cons. Stat. §§ 201-2, 201-3 (West 2024), *et seq.*).[38] According to this Court's research, Rule 9(b) does not apply to certain of Plaintiffs' claims under the above states' respective statutes.

Nonetheless, the Court "defers consideration" of these claims until Plaintiffs "have adequately alleged a basis for the Court's subject matter jurisdiction." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys & Abbvie Inc.*, 192 F. Supp. 3d 963, 972 (N.D. Ill. 2016). For even if Plaintiffs have pleaded facts constituting cognizable claims under these statutes, the

---

[37] To state a claim for a violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349-350, a plaintiff must show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-4697, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016) (citation omitted). However, "GBL § 349 is not subject to the more demanding pleading requirements of Federal Rule of Civil Procedure 9(b)." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 996 (N.D. Cal. 2016). And New York's highest court "has suggested that a defendant-manufacturer's failure to disclose material information to consumers is actionable conduct under Section 349." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 860 (S.D. Ohio 2012) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995)). Even though Plaintiffs propound a primary theory of liability alleging Defendants "misrepresent[ed] the Mainstays candles' nature" and "have not recalled their products nor provided any remedial efforts," Second Am. Compl., ¶ 900, Plaintiffs also suggest that Defendants' deceptive acts and practices "includ[e] their omissions." *Id.* ¶ 899.

[38] A UTPCPL claim based on deceptive conduct appears to "differ[] from a claim based on fraudulent conduct in that a plaintiff 'does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b).'" *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013) (quoting *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 807 (E.D. Pa. 2011). In *Fazio v. Guardian Life Ins. Co. of Am.*, the court held that a jury instruction that "deceptive conduct" for purposes of the UTPCPL is "'misleading' conduct accurately set[s] forth the standard of liability under the amended catchall provision." *Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 407 (Pa. Super. Ct. 2012). Even though Plaintiffs' theory of liability is that Defendants "withheld critical material information" and engaged in "fraudulent conduct," Second Am. Compl., ¶¶ 982–83, Plaintiffs may have stated a claim under this statute's catchall provision that provides for a cause of action for deceptive conduct.

Court is unable to determine that these remaining claims meet the amount in controversy requirement. *See* Fed. R. Civ. P. 12(h)(3).

## V. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon ... may be a proper subject of relief ...." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, absent any reason including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). Sixth Circuit case law "manifests liberality in allowing amendments to a complaint." *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (international quotation marks and citations omitted).

The Court invokes the spirit of the Rule to permit Plaintiffs to file a Third Amended Class Action Complaint. Plaintiffs' new filing must address or otherwise cure the deficiencies in their pleadings as outlined in this Opinion and Order. Failure to cure such deficiencies may result in an adverse determination against Plaintiffs and this Court's dismissal of these claims on the merits and with prejudice.

## VI. CONCLUSION

"Experience teaches that, unless cases are [pleaded] clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the

litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). Because of the unclear and imprecise pleadings alleged herein, this case presents this Court with these same dangers.

For the reasons set forth above, the Court **GRANTS** Candle-lite Defendants' Motion to Dismiss **WITHOUT PREJUDICE**. Doc. 38. The Court **GRANTS IN PART AND DENIES IN PART** Walmart's Motion to Dismiss **WITHOUT PREJUDICE**. Doc. 39. The Court defers consideration of three claims against Walmart until Plaintiffs re-establish subject matter jurisdiction: Count XXVII (Violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 (McKinney 2014), *et seq*.), Count XXVIII (Violation of the New York Deceptive Sales Practices Act, N.Y. Gen. Bus. Law § 350 (McKinney 2014), *et seq*.), and Count XXXII (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. §§ 201-2, 201-3 (West 2024), *et seq*.)

The Court **ORDERS** Plaintiffs to file a Third Amended Class Action Complaint within **forty-five (45) days** of the filing date of this Order. By separate Order, the case will be **REFERRED** to the Magistrate Judge whereupon the parties will be instructed to meet to ensure adequate discovery has been exchanged. During that time, the Court retains jurisdiction over this action unless it becomes clear that the Court is divorced of it. Plaintiffs' Motion to Certify Class (Doc. 68), Defendants' Joint Motion to Strike Motion to Certify Class (Doc. 69), and Defendants' Joint Motions for Extension of Time to Respond to Plaintiffs' Motion to Certify Class (Docs. 70, 71) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

August 4, 2025

Jeffery P. Hopkins
United States District Judge